**Certiorari Granted, No. 31,430, December 30, 2008**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-002**

**Filing Date: November 3, 2008**

**Docket No. 24,720**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**JULIAN OCHOA,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**     If a police officer cannot, consistent with the constitution, obtain information he wants from a citizen (such as his identification), does the New Mexico Constitution permit him to use what is otherwise a constitutionally valid traffic stop as a pretextual subterfuge to obtain that information? The New Mexico Supreme Court has directed us to answer that question for the first time in this case. *State v. Ochoa*, 2008-NMSC-023, ¶ 22, 143 N.M. 749, 182 P.3d 130 ("[W]e . . . remand to the Court of Appeals to determine whether the stop was pretextual and, if so, whether article II, section 10 [of the New Mexico Constitution]

1

prohibits pretextual stops."), *rev'g on other grounds, State v. Ochoa*, 2006-NMCA-131, 140 N.M. 573, 144 P.3d 132. We conclude that the traffic stop of Defendant was pretextual and, departing from federal precedent, hold that pretext stops violate the New Mexico Constitution.

**FACTUAL BACKGROUND**

**{2}** The material facts are not in dispute. We refer to the facts in our Supreme Court's opinion and add detail where necessary. Agent Edmondson of the Pecos Valley Drug Task Force was surveilling a residence for drug trafficking when he saw a vehicle with which he was not familiar. *See Ochoa*, 2008-NMSC-023, ¶ 2. He wanted to investigate it, so he returned to the residence several times to check on it. *Id.* On one of his checks, Agent Edmondson testified that while he watched the vehicle drive away from the house, he saw that the driver (Defendant) was not wearing a seatbelt. *Id.* Agent Edmondson testified that he wanted to identify and question the driver so he radioed Officer Martinez, a uniformed patrol officer, to see if he could stop the vehicle. *Id.* ¶ 3. Officer Martinez testified that Agent Edmondson told him "there was a black utility vehicle heading north on 7th and the driver wasn't wearing a seatbelt." *Id.* (internal quotation marks omitted). On the basis of the radio call, Officer Martinez located and followed the vehicle for approximately thirteen blocks, and stopped it. Officer Martinez testified that while trailing Defendant, he could not see whether he was wearing a seatbelt because the windows on the vehicle were tinted. *Id.* When Defendant stopped and rolled down the driver-side window, Officer Martinez immediately recognized him as a someone with outstanding warrants for his arrest. *Id.* Officer Martinez could not recall whether or not Defendant was wearing his seatbelt when he was stopped. *See id.*; *Ochoa*, 2006-NMCA-131, ¶ 2.

**{3}** Officer Martinez confirmed the warrants, arrested Defendant, and placed him in the patrol car. *Ochoa*, 2008-NMSC-023, ¶ 5. Agent Edmondson and two other officers arrived. *Id.* Agent Edmondson read Defendant his rights, and questioned him about drug trafficking at the residence the agent was investigating. *Id.* Defendant gave Agent Edmondson consent to search the vehicle and told him there was a pipe and methamphetamine in the vehicle. *Id.* With Defendant's assistance and through the vehicle inventory search, the officers found methamphetamine, a pipe, and a handgun. *Id.* Defendant was charged with possession of a controlled substance and possession of drug paraphernalia. *Id.*

**{4}** Defendant moved to suppress the evidence on the grounds that the traffic stop to enforce an alleged technical violation of the traffic code was a pretext to investigate Agent Edmondson's unsupported intuition that Defendant was involved in drug activity and that a pretextual stop violates article II, section 10 of the New Mexico Constitution. *Id.* ¶ 1. The State argued that the stop was permitted by the New Mexico Constitution on grounds that it was supported by reasonable suspicion, even probable cause, to believe that Defendant violated the traffic code by not wearing his seatbelt.

**{5}** The district court agreed with Defendant that Agent Edmondson "had little, if any, interest in the seatbelt violation [and that he wanted] the vehicle stopped so that he could I.D.

the driver and ask about activities at the residence." The district court nevertheless agreed with the State that Officer Martinez could stop Defendant's vehicle based on the reliable information from Agent Edmondson that Defendant was not wearing a seatbelt. The district court thus denied the motion to suppress.

## DISCUSSION

**{6}** "The constitutionality of a search or seizure is a mixed question of law and fact and demands de novo review." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 6, 130 N.M. 386, 25 P.3d 225. When a defendant invokes our inherent power as a separate sovereign in our federalist system of government to provide *more* liberty under the New Mexico Constitution than is mandated by the United States Constitution, we utilize the interstitial approach to interpret the New Mexico Constitution. *State v. Gomez*, 1997-NMSC-006, ¶¶ 17, 19-22, 122 N.M. 777, 932 P.2d 1.

## INTERSTITIAL ANALYSIS

**{7}** "Pursuant to *Gomez*, we ask: (1) whether the right being asserted is protected under the federal Constitution; (2) whether the state constitutional claim has been preserved; and (3) whether there exists one of three reasons for diverging from federal precedent." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 6.

### Federal Interpretation of the Fourth Amendment

**{8}** The United States Supreme Court has decided that pretextual traffic stops are not prohibited by the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806 (1996). In *Whren*, the Supreme Court held that for an ordinary traffic stop to be constitutionally valid, all that is needed is probable cause that the driver violated the traffic code. 517 U.S. at 810, 813-14, 819. The Court stated that "[s]ubjective intentions [whatever they may be] play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813. Thus, because the Fourth Amendment of the United States Constitution does not protect citizens against pretextual stops, we examine whether Defendant preserved his challenge under the New Mexico Constitution.

### Preservation

**{9}** When a party claims that the state courts have not interpreted a provision of the state constitution differently than its federal counterpart, that "party also must assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision." *Gomez*, 1997-NMSC-006, ¶ 23 (emphasis omitted) (footnote omitted). In the present case, both parties acknowledged to the district court that the validity of pretextual stops under the New Mexico Constitution has not been squarely addressed by New Mexico appellate courts.

3

**{10}** Defendant argued to the district court that New Mexico constitutional law should protect against pretextual traffic stops because it provides a distinctive, extra layer of protection against unreasonable searches and seizures involving automobiles that is unavailable at the federal level. Furthermore, Defendant argued, New Mexico courts cannot provide this layer of protection if they are unable to meaningfully review all evidence regarding the reasonableness of an officer's conduct. The State therefore agrees that Defendant properly preserved his state constitutional challenge to pretextual stops, that the district court was sufficiently apprised of his claims, and that the district court had an opportunity to rule on the matter.

**{11}** We agree with the parties, and hold that Defendant adequately preserved his state constitutional claim for our review by developing the relevant facts through the officers' testimony and the reasons to interpret our state constitution more expansively through legal argument at the suppression hearing. Therefore, we next determine whether justification exists to diverge from federal precedent.

## Diverging from Federal Precedent

**{12}** "We may depart from federal precedent if federal analysis is flawed or undeveloped, if structural differences exist between state and federal government, or if New Mexico has distinct state characteristics supporting such a departure." *State v. Granville*, 2006-NMCA-098, ¶ 17, 140 N.M. 345, 142 P.3d 933. We depart from federal constitutional law in this case because we find the federal analysis unpersuasive and incompatible with our state's distinctively protective standards for searches and seizures of automobiles.

## Critique of *Whren*

**{13}** The *Whren* opinion, authorizing pretextual traffic stops, has suffered widespread criticism of its legal reasoning, policy choices, and consequences. *See, e.g.*, Phyllis W. Beck & Patricia A. Daly, *State Constitutional Analysis of Pretext Stops: Racial Profiling and Public Policy Concerns*, 72 Temp. L. Rev. 597, 597 (1999) ("Scholars, journalists, and lawyers promptly and vociferously assailed the *Whren* decision as legally incorrect, technically flawed, and fundamentally unfair."); David O. Markus, *Whren v. United States: A Pretext to Subvert the Fourth Amendment*, 14 Harv. BlackLetter L.J. 91, 96-109 (1998) (explaining how the *Whren* decision disregarded the purpose of the Fourth Amendment's "reasonableness" requirement, inexplicably dismissed the Supreme Court's own statements condemning police pretext, relied on unpersuasive evidentiary problems with discerning subjective intent, and disempowered the courts from ferreting out police perjury and weighing the evidence); Patricia Leary & Stephanie Rae Williams, *Toward a State Constitutional Check on Police Discretion to Patrol the Fourth Amendment's Outer Frontier: A Subjective Test for Pretextual Seizures*, 69 Temp. L. Rev. 1007, 1025 (1996) (describing the *Whren* decision as "a rickety piece of judicial scholarship . . . built upon unreasoned distinctions, perversions of precedent, a question-begging unarticulated and unsupported premise, bootstrapping, logical inconsistencies, and a narrow vision of the Fourth Amendment").

**{14}**    The *Whren* decision uses objectivity as the ultimate constitutional measure for reasonable traffic stops without offering an affirmative reason for this conclusion. The *Whren* opinion dismissed the Supreme Court's own prior statements expressing hostility toward police pretext and declared that Supreme Court case law forecloses any inquiry into the officers' motivations to conduct a routine traffic stop. *See Whren*, 517 U.S. at 811-13; *see also* Markus, *supra*, at 98 ("[S]ince when do prior statements become irrelevant, especially where they are so pervasive and consistently caution against pretext?"). The Court reached its conclusion with an air of inevitability, despite the obvious: the Court had not yet decided the constitutionality of pretextual traffic stops, and there was inconsistency among the federal circuits and state appellate courts in their approaches to pretextual traffic stops under the Fourth Amendment. *See State v. Heath*, 929 A.2d 390, 398-99 (Del. Super. Ct. 2006) (describing the standards used by the federal circuit courts and state appellate courts to address pretextual stops prior to *Whren*).

**{15}**    The United States Supreme Court distinguished those cases in which it questioned the existence of police pretext in the course of a search and seizure, on the grounds that they involved inventory and administrative searches, which do not require probable cause. *See Whren*, 517 U.S. at 811-12; *see also State v. Ryon*, 2005-NMSC-005, ¶¶ 33-36, 137 N.M. 174, 108 P.3d 1032 (adopting a subjective motivation test for officers acting under the emergency assistance doctrine based on the distinction made in *Whren* for criminal investigations that do not require probable cause). The assumption underlying this distinction is that the requirement of reasonable suspicion or probable cause is, by itself, sufficient protection from an officer using a search or seizure as a subterfuge or pretext to gather evidence for a criminal investigation. *See Ryon*, 2005-NMSC-005, ¶¶ 33-34. Applying its distinction, the *Whren* Court contrasted the ordinary traffic stop with inventory and administrative searches and seizures which do not require probable cause. *See Whren*, 517 U.S. at 811-13. However, what makes a traffic stop "ordinary" is that the driver is being stopped *because of* a reasonable suspicion that the driver is involved in criminal activity or *because of* a reasonable suspicion that the driver committed a traffic violation.

**{16}**    We are not persuaded that the distinction made by the United States Supreme Court is meaningful in the context of a pretextual traffic stop. In performing a pretextual traffic stop, a police officer is stopping the driver, "not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation." *State v. Ladson*, 979 P.2d 833, 837-38 (Wash. 1999) (en banc). Although there may be a technical violation of the traffic law, the true reason for the stop lacks legal sufficiency. Thus, by definition, a pretextual stop raises the identical constitutional concerns which our Supreme Court recognized under the emergency assistance doctrine in *Ryon*: that police officers will abuse what is otherwise valid presence as a subterfuge to conduct an invalid investigation.

**{17}**    One of the main criticisms of *Whren* is its failure to acknowledge that because the extensive traffic code regulates all manner of driving "'[w]hether it be for failing to signal

5

while changing lanes, driving with a headlight out, or not giving 'full time and attention to the operation of the vehicle, virtually the entire driving population is in violation of some regulation as soon as they get in their cars, or shortly thereafter.'" Ladson, 979 P.2d at 842 n.10 (quoting Peter Shakow, *Let He Who Never Has Turned Without Signaling Cast the First Stone*: *An Analysis of Whren v. United States*, 24 Am. J. Crim. L. 627, 633 (1997)). We have previously recognized that the underlying concern of the United States Supreme Court and other courts and commentators addressing police pretext is the unbridled police discretion that results from the extensiveness of the traffic code:

> [G]iven the pervasiveness of . . . minor [traffic] offenses and the ease with which law enforcement agents may uncover them in the conduct of virtually everyone, [the requirement of a traffic violation] hardly matters, for . . . there exists "a power that places the liberty of every man in the hands of every petty officer," precisely the kind of arbitrary authority which gave rise to the Fourth Amendment.

*State v. Bolton*, 111 N.M. 28, 33, 801 P.2d 98, 103 (Ct. App. 1990) (alteration in original) (quoting 1 Wayne R. LaFave, *Search and Seizure*, § 1.4(e), at 95 (2d ed. 1987)).

**{18}** This concern with practically limitless discretion afforded officers enforcing traffic laws is not merely hypothetical. Given the ubiquity of driving in this country, it is ordinary traffic stops that are "among the most common encounters regular citizens have with police." David A. Harris, *The Stories, the Statistics, and the Law*: *Why "Driving While Black" Matters*, 84 Minn. L. Rev. 265, 298 (Dec. 1999). Furthermore, "the statistics show that [pretextual traffic stops] are not simply disconnected anecdotes or exaggerated versions of personal experiences, but rather established and persistent patterns of law enforcement conduct." *Id.* at 299. Thus, we are not persuaded as the *Whren* court was, that probable cause and reasonable suspicion standards are sufficient to limit police discretion to enforcement of traffic offenses. This is because driving a vehicle is ubiquitous in American life. The extensive regulation of all manner of driving subjects virtually all drivers to the whim of officers who choose to selectively enforce the traffic code for improper purposes. We believe the United States Supreme Court has drawn a distinction without a difference. The concerns that justify testing officers' subjective motivations in suspicionless checkpoints and inventory searches as a practical matter are at least equally applicable to "ordinary" traffic stops. *See* Wayne R. LaFave, *The "Routine Traffic Stop" From Start to Finish*: *Too Much "Routine," Not Enough Fourth Amendment*, 102 Mich. L. Rev. 1843, 1854 (2004) ("Indeed, it is likely true that the probable-cause requirement in the context of minor traffic offenses provides considerably less protection against arbitrariness than do the 'standardized procedures' and 'reasonable legislative or administrative standards' requirements for inventories and administrative inspections, respectively." (internal quotation marks omitted)).

**{19}** In response to the arguments in *Whren* that the selective enforcement of traffic code is often informed by factors such as race, the United States Supreme Court agreed that selective law enforcement based on such improper considerations is wrong and, indeed,

6

unconstitutional. *See Whren*, 517 U.S. at 813; LaFave, *Routine Traffic Stop*, *supra*, at 1861. Discarding the Fourth Amendment as an avenue to redress such improper subjective motives, the opinion states that the appropriate "constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Whren*, 517 U.S. at 813. This remedy is often criticized as ineffective. *See, e.g.*, LaFave, *Routine Traffic Stop*, *supra*, at 1860-61; David A. Harris, *"Driving While Black" and All Other Traffic Offenses: The Supreme Court and Pretextual Traffic Stops*, 87 J. Crim. L. & Criminology 544, 550-53 (1997) (explaining how federal precedent precludes proof of disparate impact and does not consider statistical evidence of racial patterns and how inaccessible relevant law enforcement information is to criminal defendants). LaFave describes the hurdles to establishing a federal equal protection claim as nearly insurmountable and concludes that "it is still less than certain that meaningful relief would be forthcoming, for absent recognition of an equal protection exclusionary rule, the defendant's only relief is likely to be dismissal of the traffic charge." LaFave, *Routine Traffic Stop*, *supra*, at 1861 (footnote omitted). Furthermore, the Equal Protection Clause provides no remedy to redress pretextual stops motivated by improper factors outside of race. The exclusionary rule is available only where a court believes that the search and seizure was unreasonable and that excluding the evidence will work as a deterrent for police misconduct. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987) (stating that "the prime purpose of the exclusionary rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures" (internal quotation marks and citation omitted)). Because the United States Supreme Court does not believe that a traffic stop permitted by the traffic code, but initiated for an unconstitutional reason, renders the stop unreasonable, the Court not only refuses to condemn this bad police conduct, it rewards pretextual stops by permitting prosecution with the evidentiary fruits of the stop.

**New Mexico's Distinctive Protection of Privacy in an Automobile**

**{20}** New Mexico constitutional law permits us to expand the federal protections afforded New Mexico's motorists from unreasonable searches and seizures because New Mexico courts have rejected "the notion that an individual lowers his expectation of privacy when he enters an automobile." *Cardenas-Alvarez*, 2001-NMSC-017, ¶ 15. "The extra layer of protection from unreasonable searches and seizures involving automobiles is a distinct characteristic of New Mexico constitutional law" and therefore supports our departure from *Whren*. *Id.*

Article II, section 10 of the New Mexico Constitution provides:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

N.M. Const. art. II, § 10. "[S]earches conducted outside the judicial process, without prior

7

approval by judge or magistrate, are *per se* unreasonable, subject only to well-delineated exceptions." *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *Id.* (internal quotation marks and citation omitted). "The warrant requirement protects an individual from unreasonable searches and seizures by ensuring that a neutral party determines that probable cause exists, thereby justifying a search that might otherwise be unreasonable." *Granville*, 2006-NMCA-098, ¶ 24. New Mexico courts recognize the distinct interests of police and the courts and emphasize a strong preference for warrants: "[t]hrough the warrant procedure, we prevent law enforcement 'from allowing the competitive pressures of fighting crime to compromise their judgment about whether or not to carry out a given search.'" *Id.* ¶ 24 (quoting *Gomez*, 1997-NMSC-006, ¶ 38).

**{21}** Our courts have refused to adopt federal precedent, which permits searches and seizures conducted under an exception to the warrant requirement when the reason for the search or seizure is not justified by the reason for that exception. *See, e.g.*, *id.* ¶¶ 18-21; *Gomez*, 1997-NMSC-006, ¶¶ 34, 37-44.

**{22}** In *Gomez*, our Supreme Court examined the two principles upon which the federal automobile exception to the warrant requirement was created: "(1) the inherent mobility of automobiles creates exigent circumstances, and (2) a lesser expectation of privacy attaches to the contents of a motor vehicle because of the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* ¶ 34 (internal quotation marks and citations omitted). The Court rejected the federal automobile exception, holding that warrantless automobile searches cannot be automatic; they must be reasonable, based on a true exigency. *See id.* ¶¶ 37-44. The Court determined that where there is no reasonable basis to believe that the delay in obtaining a search warrant will jeopardize legitimate law enforcement interests, there is no justification for an exception to the warrant requirement. *See id.* ¶¶ 41-43.

**{23}** Most recently, in *Rowell*, our Supreme Court departed from federal precedent that an officer may search an automobile "whenever an arrestee had been stopped in a car, even if he or she no longer had any access to it at the time of the search." 2008-NMSC-041, ¶ 15. The Court expressed concern that the federal case law "creates a risk that police will make custodial arrests which they otherwise would not make as a cover for a search which the Fourth Amendment otherwise prohibits." *Id.* ¶ 21 (internal quotation marks and citation omitted). The Court determined that allowing a search of the vehicle as a search incident to arrest would stretch the exception beyond its breaking point where an arrestee has no access to the vehicle. *See id.* ¶¶ 22-25 (emphasizing that the exception for searches incident to arrest is focused on constitutional reasonableness to be applied to the specific circumstances facing the officer).

**{24}** New Mexico courts have frequently broadened search and seizure protections under our state constitution. *See Granville*, 2006-NMCA-098, ¶ 14 (listing nine cases from the previous fifteen years in which our courts have construed article II, section 10 to provide broader protections than are available under the Fourth Amendment). In these cases and

8

more, New Mexico courts have consistently rejected federal bright-line rules in favor of an examination into the reasonableness of officers' actions under the circumstances of each case. *See Granville*, 2006-NMCA-098, ¶ 18 ("We avoid bright-line, per se rules in determining reasonableness; instead we consider the facts of each case."); *Gomez*, 1997-NMSC-006, ¶¶ 37-44 (rejecting the federal automobile exception to the warrant requirement and requiring officers to have reasonable basis to believe that a particular exigency exists to search a vehicle); *Granville*, 2006-NMCA-098, ¶ 18 ("In all cases that invoke [a]rticle II, [s]ection 10, the ultimate question is reasonableness."). "The myriad rules, exceptions, and exceptions to exceptions that flourish in the jurisprudence of search and seizure are often no more than factual manifestations of the constitutional requirement that searches and seizures be reasonable." *State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) , *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 13-20, 138 N.M. 9, 116 P.3d 80.

**{25}**     The exception to the warrant requirement at issue in the present case is an investigatory stop supported by reasonable suspicion of criminal activity or probable cause that the traffic code has been violated.  The purpose of requiring objectively reasonable suspicion based on the circumstances "is to prevent and invalidate police conduct based on 'hunches,' which are, by definition, subjective." Leary & Williams, *supra*, at 1030; *see State v. Neal*, 2007-NMSC-043, ¶¶ 21, 28, 142 N.M. 176, 164 P.3d 57.  A pretextual traffic stop is a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a "hunch," a different more serious investigative agenda for which there is no reasonable suspicion or probable cause. *Whren* "established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).  Our courts reject "bright-line rules that would have held certain categories of searches or seizures to be per se reasonable so long as there was probable cause." *State v. Rodarte*, 2005-NMCA-141, ¶ 14, 138 N.M. 668, 125 P.3d 647.

**{26}**     We believe that our constitutional requirement that searches and seizures be reasonable based on the particular facts of each case should preclude our adoption of the mechanical federal rule that a technical violation of the traffic code automatically legitimizes a stop.  Further, consistent with our previous departures from federal precedent, we do not believe that the federal bright-line rule is justified.  The purpose of the reasonable suspicion/probable cause exception to the warrant requirement–to prevent officers from acting on unsupported hunches–is not furthered when our courts refuse to examine the unconstitutional hunch motivating the stop.

**{27}**     The Supreme Court of Washington has rejected *Whren* on a basis consistent with this Court's view.  *See Ladson*, 979 P.2d at 837-42.  It states that Washington's "state constitutional provision is designed to guard against unreasonable search and seizure, made without probable cause."  *Id.* at 838 (internal quotation marks and citation omitted). Characterizing pretext as "result without reason," the Washington Supreme Court concluded that "[t]he ultimate teaching of our case law is that the police may not abuse their authority to conduct a warrantless search or seizure under a narrow exception to the warrant

9

requirement when the reason for the search or seizure does not fall within the scope of the reason for the exception." *Id.* at 838, 842.

{28}    Similarly, the Superior Court of Delaware has determined that permitting police unfettered discretion to use a traffic violation to investigate an officer's hunch about a separate offense is "the equivalent of granting the police a general warrant to search and seize virtually all travelers on the roads of this [s]tate." *Heath*, 929 A.2d at 402. The Delaware court concluded that purely pretextual stops, "demonstrated to have been made exclusively for the purpose of investigating an officer's hunch about some other offense," run afoul of the underlying purpose of the prohibition against unreasonable searches and seizures in the Delaware Constitution. *Id.*

**The State's Arguments**

{29}    First, the State relies on several cases that have held that an officer need only reasonable suspicion that a law has been or is being violated to stop a driver. *See State v. Vargas*, 120 N.M. 416, 418-19, 902 P.2d 571, 573-74 (Ct. App. 1995); *State v. Mann*, 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct. App. 1985); *State v. Galvan*, 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct. App. 1977). None of these cases analyze the traffic stop under the state constitutional interstitial approach we employ here. Therefore, we see no basis in these cases for concluding that our state constitutional preference for warrants is inapplicable to traffic stops.

{30}    Second, the State contends that this Court has, in fact, rejected the claim that an investigative detention should be analyzed differently under the New Mexico Constitution, relying on *State v. Jimmy R.*, 1997-NMCA-107, ¶ 6, 124 N.M. 45, 946 P.2d 648. We are not persuaded by the State's characterization of our holding nor are we persuaded that the opinion applies here. *Jimmy R.* did not involve a traffic stop or any claim of police pretext. *Id.* ¶¶ 1-2. Furthermore, in that case we were not persuaded that Child met his burden of persuasion under the requirements of the interstitial approach that the New Mexico Constitution affords more protection for investigative detentions than the United States Constitution. *Id.* ¶ 6 ("Child cites no authority and makes no arguments to explain why an investigative detention should be analyzed differently under the New Mexico Constitution.").

{31}    Third, the State argues that New Mexico's historical treatment of pretext claims does not justify our departure from *Whren*. The State refers us to cases in which we have rejected pretextual traffic stop claims where there was an objectively valid basis for the stop. *See State v. Pallor*, 1996-NMCA-083, ¶¶ 14-15, 122 N.M. 232, 923 P.2d 599; *State v. Benjamin C.*, 109 N.M. 67, 69, 781 P.2d 795, 797 (Ct. App. 1989); *Mann*, 103 N.M. at 663-64, 712 P.2d at 9-10. Again, these cases do not apply the interstitial analysis of state constitutional claims.

{32}    In *Pallor*, we rejected the defendant's claim that the officers' traffic stop was a pretext to investigate drug activity because the officers had a reasonable suspicion that the

10

defendant was engaged in drug activity. 1996-NMCA-083, ¶¶ 13-14. In *Benjamin C.*, we applied two federal standards to the child's claim of pretext: (1) the purely objective probable cause/reasonable suspicion standard that was adopted in *Whren*, and (2) the more probing federal standard applied at the time by the Tenth Circuit in *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995). *Benjamin C.*, 109 N.M. at 69, 781 P.2d at 797. *Guzman* applied the "would have" approach to pretextual stops: "In the same circumstances would a reasonable police officer have made the stop in the absence of an invalid purpose? Under *Guzman*, [a] stop [i]s unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." *Benjamin C.*, 109 N.M. at 69, 781 P.2d at 797 (alterations in original) (internal quotation marks and citations omitted). Because the child in *Benjamin C.* did not articulate what ulterior motive the officers had for the stop, we had no basis to engage any meaningful *Guzman* analysis. *See id.* In *Mann*, we applied the federal standard under the Fourth Amendment to the defendant's claim that the initial stop was pretextual. 103 N.M. at 663-64, 712 P.2d at 9-10. Further, like *Benjamin C.*, the *Mann* opinion gives no indication what the pretextual purpose might have been.

**{33}** Since *Mann*, this Court has been inconsistent in its approach to allegations of pretextual stops, reflective of the varying federal standards before *Whren*, and we have been hesitant to establish a definitive standard. *See, e.g.*, *State v. Apodaca*, 112 N.M. 302, 304, 814 P.2d 1030, 1032 (Ct. App. 1991) (observing that the district court made a specific finding that the officer did not have a pretextual purpose in stopping the defendant); *Bolton*, 111 N.M. at 35, 801 P.2d at 103 (refusing to decide "whether to adopt a sole-bad-purpose test or a primary-bad-purpose test–or even whether to adopt a subjective test at all" where a defendant challenged his stop at a state police roadblock administered by both the state police and United States Border Patrol agents, on pretext grounds, but concluding that "the district court was entitled to find, based on the evidence before it, that the purpose of the roadblock in this case was legitimate"); *Benjamin C.*, 109 N.M. at 69, 781 P.2d at 797 (articulating both the probable cause/reasonable suspicion standard and the "would have" standard).

**{34}** Although no New Mexico case until today has decided the validity of pretextual stops under our state constitution, we have admonished pretextual practices, revealing a distinct inclination to remove police pretext from the range of reasonable police conduct. *See, e.g.*, *State v. Lowe*, 2004-NMCA-054, ¶ 22, 135 N.M. 520, 90 P.3d 539 (stating that where officers attempt to "inquire about weapons as a ploy leading to other bad faith action to uncover criminal activity based on speculation or bare suspicion, [w]e make it very clear that an abuse of these precautionary measures to protect against harm from weapons should not be tolerated by district courts and will not be tolerated by this Court when those measures smack of pretext or ruse"); *see also Ryon*, 2005-NMSC-005, ¶¶ 34-37 (refusing to permit officers to "use the [emergency assistance] doctrine as a subterfuge or pretext when the real purpose of the search is to arrest a suspect or gather evidence without probable cause"); *State v. Prince*, 2004-NMCA-127, ¶ 19, 136 N.M. 521, 101 P.3d 332 (facing a claim of pretext and refusing to permit the officer to " use a lawful stop to fish for evidence of other

11

crimes" and expand the traffic stop into a drug investigation that was not supported by reasonable, articulable suspicion); *State v. Montoya*, 116 N.M. 297, 303, 861 P.2d 978, 984 (Ct. App. 1993) ("This pretext doctrine is generally justified as a means of restricting what would otherwise amount in practice to unbridled police discretion in certain circumstances, such as detentions for traffic offenses.").

**{35}** Finally, the State argues that diverging from *Whren* is not needed to protect New Mexico citizens from unreasonable searches and seizures. The State argues that the police do not have unlimited discretion under *Whren* because they are limited by probable cause and reasonable suspicion. At the same time, the State admits that officers must decide who to stop and when because it would not be possible to strictly enforce the multitude of traffic laws. We agree. However, we limit that discretion to avoid bad faith. Police officers may enforce any and all traffic laws, so long as it is done with reasonable suspicion and in good faith *for that purpose*.

**{36}** The State argues that the existing case law in New Mexico sufficiently protects individuals from searches and seizures by strictly limiting the scope of a traffic stop to specific articulable suspicions. We agree that our case law strictly limits the scope of traffic stops, often in an effort to curb pretextual traffic stops. *See Prince*, 2004-NMCA-127, ¶ 19; *Neal*, 2007-NMSC-043, ¶¶ 21, 28. However, it is a basic tenet of search and seizure law that a traffic stop must be reasonable and justified at its inception. *See State v. Anaya*, 2008-NMCA-020, ¶ 17, 143 N.M. 431, 176 P.3d 1163 (holding that the officer's mistaken belief that a traffic offense had occurred did not create reasonable suspicion necessary for a valid traffic stop). The case at hand exemplifies the need to enforce constitutional limits on searches and seizures at the inception of the stop because the scope of the stop does not ferret out the pretextual motivations underlying it.

**{37}** The purpose of our objective reasonable suspicion/probable cause exception to the warrant requirement is to prevent officers from arbitrarily acting on whims or unsupported hunches, because that is constitutionally unreasonable. *See* Leary & Williams, *supra*, at 1029-30; *Neal*, 2007-NMSC-043, ¶¶ 21, 28. The purpose of the exception is undermined where the reason for the stop is an unsupported hunch or is otherwise legally insufficient. "Pretext is therefore a triumph of form over substance; a triumph of expediency at the expense of reason." *Ladson*, 979 P.2d at 838.

**{38}** We do not accept the State's arguments that our constitution, which favors an examination into the reasonableness of officers' actions under the circumstances of each case, should disempower and disable the courts from examining whether an officer has an unconstitutional reason for making a stop. This would be an abdication of our judicial responsibility to meaningfully review police action, ferret out police perjury, weigh the evidence, and guard our citizens' privacy rights. We would in effect legitimize a charade, a mockery of the legal justifications we recognize for permitting the most common of police intrusions. This we will not do. We hold that pretextual traffic stops are not constitutionally reasonable in New Mexico.

12

**Standard for Pretextual Stops**

**{39}**     To determine whether a stop is a pretextual subterfuge, courts should consider the totality of the circumstances, judge the credibility of witnesses, weigh the evidence, make a decision, and exclude the evidence if the stop was unreasonable at its inception. The totality of the circumstances includes considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer–the real reason for the stop. *See id.* at 843 ("When determining whether a given stop is pretextual, the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior."). We are reminded that courts perform the task of identifying intent regularly in a variety of settings. In the context of an alleged pretext stop, the officer's intent is determined like any other fact, based on the evidence presented and consideration of the factors we describe below.

**{40}**     We believe that the following standard can identify an unreasonable, pretextual stop. *See Heath*, 929 A.2d at 403 (adopting a similar standard). First, the trial court must determine whether there was reasonable suspicion or probable cause for the stop. *Id.* at 402-03. As usual, the State has the burden of proof to justify the stop under an exception to the warrant requirement. *See Rowell*, 2008-NMSC-041, ¶ 10. If the stop can be justified objectively on its face and the defendant argues that the seizure was nevertheless unreasonable because it was pretextual under the New Mexico Constitution, then the district court must decide whether the officer's "motive for [the stop] was unrelated to the objective existence of reasonable suspicion or probable cause." Leary & Williams, *supra*, at 1038. The defendant has the burden of proof to show pretext based on the totality of the circumstances. If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual. If the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was pretextual. *See id.* The burden shifts to the state to establish that, based on the totality of the circumstances, even without that unrelated motive, the officer would have stopped the defendant. *See id.*

**{41}**     Facts relevant to the totality of the circumstances may include the following: whether the defendant was arrested for and charged with a crime unrelated to the stop; the officer's compliance or non-compliance with standard police practices; whether the officer was in an unmarked car or was not in uniform; whether patrolling or enforcement of the traffic code were among the officer's typical employment duties; whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed the stop was made, how many officers were present for the stop; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop. *See Heath*, 929 A.2d at 403; Shakow, *supra*, at 640; Leary & Williams, *supra*, at 1038-39. This is not an exhaustive list of pretext indicators, but some guiding factors relevant to the inquiry.

13

**{42}** Where there is a factual finding of pretext, that the officer had a constitutionally invalid purpose for the stop which is not exempt from the warrant requirement, the stop violates the New Mexico Constitution, and the evidentiary fruits of the stop are inadmissible.

**Application of the Pretext Standard**

**{43}** Because sufficient facts were developed and findings were made, we apply the pretext standard here. The officers' objective justification for the stop was a seatbelt violation. The district court ruled that Agent Edmondson's radio call indicating that he saw Defendant was not wearing a seatbelt was reliable information upon which to conduct the stop. Undisputedly, a seatbelt violation constitutes sufficient objective justification for the stop. Defendant argued that the stop for an alleged seatbelt violation was a pretext, however, for Agent Edmondson to investigate his unsupported intuition that Defendant was involved in drug activity.

**{44}** The facts developed in support of Defendant's claim of pretext were as follows. Officer Edmondson was investigating the residence for drug activity and the presence of Defendant's vehicle at the residence. *See Ochoa*, 2008-NMSC-023, ¶ 2. Agent Edmondson does not issue traffic citations as a part of his duties as a narcotics investigator with the Pecos Valley Drug Task Force. Agent Edmondson testified that he wanted to identify and question Defendant. *Id.* ¶¶ 2-3. The agent radioed a uniformed patrol officer "to see if Officer Martinez would pull [Defendant] over." *Id.* ¶ 3. On the sole basis of the radio call, Officer Martinez followed Defendant for approximately thirteen blocks and stopped him. *Id.* ¶ 4. Because the windows on Defendant's vehicle were tinted, Officer Martinez could not determine whether or not Defendant was wearing a seatbelt. *Id.* Nevertheless, because of Agent Edmondson's report, Officer Martinez pulled over Defendant. *Id.* After Officer Martinez arrested Defendant because he immediately recognized Defendant as having warrants for his arrest, Agent Edmondson approached Defendant and began questioning him about drug activity at the residence. *Id.* ¶ 5.

**{45}** The district court found that Agent Edmondson "had little, if any, interest in the seatbelt violation [and that he wanted] the vehicle stopped so that he could I.D. the driver and ask about activities at the residence." Agent Edmondson lacked a constitutionally reasonable suspicion that Defendant was involved in drug activity to justify his motive for having Defendant stopped. *See Neal*, 2007-NMSC-043, ¶¶ 21-28 (holding that there was no individualized, particularized reasonable suspicion of drug activity to detain the defendant despite his cracked windshield, where the defendant was present at a residence under investigation for drug activity, the defendant spoke and was associated with the resident of the home under surveillance, became nervous speaking with police, exhibited a desire to leave, and denied police consent to search his vehicle).

**{46}** On these facts, Defendant established a rebuttable presumption that the stop was pretextual. The burden shifted to the State to establish that even without Agent Edmondson's unrelated motive, Officer Martinez would have stopped Defendant. There is no dispute that Officer Martinez had no independent basis for pulling over Defendant, and

14

that he would not have done so without the radio call from Agent Edmondson. With the Agent's admission and the district court's finding that Agent Edmondson was interested in investigating Defendant for drug activity, which lacked a constitutionally valid basis, and not the traffic violation, we hold that the stop was pretextual.

**CONCLUSION**

**{47}** Because pretextual stops are not constitutionally reasonable in New Mexico, we reverse the district court's denial of Defendant's motion to suppress.

**{48}** **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

**MICHAEL D. BUSTAMANTE, Judge**

**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Ochoa*, No. 24,720**

| | |
|---|---|
| **CA** | **Criminal Procedure** |
| CA-PQ | Pretextual Stop |
| CA-SZ | Search and Seizure |
| | |
| **CT** | **Constitutional Law** |
| CT-IA | Interstitial Analysis |
| CT-NC | New Mexico Constitution, General |