# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                    **NO. 29,297**

**VICTOR GONZALES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert M. Schwartz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellant

Robert W. Gorence
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**KENNEDY, Judge.**

The State of New Mexico appeals from the district court's order granting Defendant's motion to suppress on the basis that the traffic stop was pretextual to a drug investigation.  [RP 109]  Defendant raises the following issues on appeal:  (1)

whether the trial court erred in finding that a traffic stop supported by reasonable suspicion, e.g., a confirmed window tint violation, but conducted in part to further a narcotics investigation, is afforded greater protection under the New Mexico State Constitution than the United States Constitution; (2) whether the trial court erred in suppressing the 445.1 grams of methamphetamine found in Defendant's vehicle pursuant to a valid search warrant due to an illegal seizure based upon a pretextual stop; and (3) whether the detectives had reasonable suspicion to effect a lawful investigatory detention based upon the information obtained by the confidential informant combined with their subsequent investigation. [DS 7]

The calendar notice proposed summary affirmance, following *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 032, 206 P.3d 143 (filed 2008), *cert. granted*, 2008-NMCERT-012, 145 N.M.272, 203 P.3d 103 (No. 31,340, December 30, 2008). [Ct. App. File, CN1] The State has filed a memorandum in opposition. [Ct. App. File, MIO] Unpersuaded, we affirm.

**DISCUSSION**

Whether a search and seizure was constitutional is a mixed question of law and fact. *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836 (citing *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19). We review factual determinations by the trial court under a substantial evidence standard. *Id.* We

review the lower court's determination of legal questions de novo. *Id.*

In this case, the parties agree that the officers were on surveillance of Defendant's residence, watching the house to confirm a confidential informant's (CI's) drug trafficking information. [RP 41-42, 89-90] The information was that an individual with Defendant's name would be transporting a large amount of methamphetamine south out of Albuquerque in the afternoon or evening of July 20, 2006. [Id.] While the officers observed the residence that day, Defendant drove a Chevy Tahoe to a car wash and back to the house, and he drove a white Ford Mustang to another residence, picked up two passengers, and drove back to the residence. [RP 90] In the evening, the Tahoe again left the residence driving south on Coors Blvd. [Id.] Officer Gallegos submitted a request for a marked unit to stop the Tahoe for a window tint violation. [Id.] Officer Griego received the order to stop the Tahoe and testified at the hearing that he intended to stop the vehicle "one way or another." [Id.] Officer Gallegos also testified that it was decided that the authorities would "conduct a pretextual stop with a traffic violation and then as a pretextual stop occurred, to begin a narcotics investigation at that point." [Id.]

When the vehicle was stopped, Defendant was driving the Tahoe and there were two other passengers in the car. [RP 91] Defendant was not told the reason for the stop. [Id.] Defendant provided the officer with a valid license, registration, and

insurance for the vehicle. [Id.] Officer Griego asked all of the persons in the vehicle to exit. [Id.] The officer ran a warrants check on all of them. [Id.] The check initially came up with a person who, upon the officer's investigation, was confirmed not to be Defendant. [Id.] At that point, Officer Griego had dispelled suspicion that Defendant had a warrant for his arrest. [Id.] Three other officers arrived at the scene about this time. [Id.] Officer Griego then checked the tint level of the windows of the Tahoe and found it to be above the legal limit. [Id.] Meanwhile, one of the new officers on the scene asked Officer Griego if he could perform a canine "interdiction," and the officer consented. [RP 91-2] A canine interdiction was conducted on the exterior of the vehicle with the doors open. [Id.] The officers then asked Defendant's consent to the canine interdiction, and Defendant denied consent. [Id.] Defendant was told he was free to leave. [Id.] As Defendant approached the vehicle to close the doors, however, he was told to stay away from it. [Id.] One of the detectives then performed another canine interdiction on the interior door panels, and the dog alerted. [Id.] Based on the canine alert, Officer Gallegos completed an affidavit for a search warrant. [Id.] Officer Gallegos further testified that the affidavit contained incorrect information stating that the officers stopped Defendant while on "random patrol" rather than while on surveillance. [Id.] Officer Gallegos also testified that it was his "intent from the beginning [the investigation] was a narcotics investigation." [RP 93]

4

After the search warrant was obtained, based on the affidavit containing the incorrect information, the methamphetamine was found; Defendant and the two passengers were arrested and taken to the station for questioning. [Id.]

The district court granted Defendant's motion to suppress. [RP 109] The district court reasoned that Officer Gallegos was part of a surveillance team conducting an investigation that had targeted Defendant for trafficking methamphetamine. [Id.] The district court concluded that there were sufficient articulable facts to justify a finding of reasonable suspicion that a traffic citation should be issued for a window tint violation. [RP 110] The district court concluded, however, that "[t]he investigating police officer's testimony was candid and credible" that "the traffic stop that was conducted on Defendant's vehicle was pretextual." [Id.] Relying on this Court's opinion in *Ochoa*, 2009-NMCA-002, the district court granted Defendant's motion to suppress. [Id.] We agree.

In *Ochoa*, this Court specifically held that the federal analysis regarding pretextual stops is "unpersuasive and incompatible with our state's distinctively protective standards for searches and seizures." *Id.* ¶ 12. To the extent the State requests this Court to revisit this determination in Issue 1 and to overrule *Ochoa* [MIO 9-12], we decline to do so.

With regard to Issues 2 and 3, we stated in *Ochoa*,

> [i]n performing a pretextual traffic stop, a police officer is stopping the driver, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation.

*Id.* ¶ 16 (internal quotation marks and citation omitted). As such, as the district court determined in this case, even if the officer had reasonable articulable suspicion that the Chevy Tahoe had excessive window tint, the officer's "candid" and "credible" testimony was that the traffic stop was conducted in order for the officers to investigate Defendant for narcotics trafficking. *See id.* ¶ 39 (directing the district courts that "[t]o determine whether a stop is a pretextual subterfuge, courts should consider the totality of the circumstances, judge the credibility of witnesses, weigh the evidence, make a decision, and exclude the evidence if the stop was unreasonable at its inception"). "The totality of the circumstances includes considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer—the real reason for the stop." *Id.* (citation omitted).

In the memorandum, the State continues to argue that the traffic stop was reasonable based on Officer Griego's decision to stop the vehicle for excessive tint. [MIO 2, 9] The State now focuses, however, on arguing that "[i]rrespective of the window tint violation," [MIO 9] the officers legally stopped Defendant's vehicle based on reasonable suspicion that illegal drug trafficking activity was taking place.

6

[MIO 9, 2-3, 5-9] The State argues that the following "facts" support the officers' reasonable suspicion: information of a reliable CI that an individual with Defendant's name would be transporting a large amount of methamphetamine south out of Albuquerque in the afternoon or evening of July 20, 2006, and Defendant's alleged "counter-surveillance" activities observed by officers that day, including driving around a neighborhood at random in the Tahoe, driving a different vehicle to another residence to pick up two persons while two other people looked up and down the street, and returning to Defendant's residence before leaving again in the Tahoe and driving south. [MIO 2]

The State then adds the excessive window tint to the CI's information and Defendant's alleged "heat run" narcotics activities to argue that the officers had reasonable suspicion to stop Defendant's vehicle. [Id.] The State contends, therefore, that this case is controlled by *State v. Pallor*, 1996-NMCA-083, 122 N.M. 232, 923 P.2d 599, a case distinguished in *Ochoa*, 2009-NMCA-002, ¶ 32. [MIO 8] In *Pallor*, this Court affirmed the district court's decision to deny the defendant's motion to suppress, holding that the officers had reasonable suspicion of a drug crime and this reasonable suspicion together with the officers' undisputed testimony that he knew the defendant was driving on a revoked license justified stopping the defendant's vehicle. *Pallor*, 1996-NMCA–083, ¶¶ 12-13. In *Pallor*, the State was the prevailing party in

7

the district court, and we considered that "any inference that can be drawn from the facts that the revoked license played any part in the reasoning to stop [the d]efendant will be viewed in the manner most favorable to the prevailing party and all reasonable inferences in support thereof will be indulged by the reviewing court." *Id.* ¶ 15 (citation omitted). In *Pallor*, we concluded that, "[h]aving determined that the standard of reasonable suspicion had been met, the claim of a pretextual stop cannot be substantiated." *Id.* ¶ 12.

In this case, however, Defendant is the prevailing party, and therefore, we review the facts in the manner most favorable to Defendant. In this case, moreover, Defendant's claim of a pretextual stop was substantiated by what the district court found to be the officer's "candid" and "credible" testimony. [RP 110] As stated above, the testimony at the suppression hearing was that Officer Gallegos submitted a request for a marked unit to stop the Chevy Tahoe for a window tint violation. [Id.] Officer Griego received the order to stop the Tahoe and testified at the hearing that he intended to stop the vehicle "one way or another." [Id.] Officer Gallegos also testified that it was decided that the authorities would "conduct a pretextual stop with a traffic violation and then as a pretextual stop occurred, to begin a narcotics investigation at that point." [Id.]

In *Ochoa*, based on the officer's testimony as to the real reason for the stop, the

district court determined that the officer's "motive for the stop was unrelated to the objective existence of reasonable suspicion or probable cause." 2009-NMCA-002, ¶ 40. Similarly, in this case, the officer testified that the real reason for the stop was pretextual. Moreover, we note that during surveillance the officers observed the alleged excessive window tint on the Tahoe earlier in the day, when the vehicle left the residence and drove to a car wash. The officers did not stop the vehicle for the window tint violation at that time, however, making the stop unnecessary for the protection of traffic safety. *See id.* (discussing the facts relevant to the totality of the circumstances when considering whether a traffic stop is pretextual). Further, as in *Ochoa*, after the stop was made in this case, the numerous officers at the scene had little interest in investigating the window tint violation. Despite the fact that Defendant provided the officer with valid license, registration and insurance, Defendant and the passengers were immediately ordered out of the vehicle, a warrants check was made, and a canine interdiction accomplished with the assistance of three officers, while one officer also incidentally checked the window tint level.

**CONCLUSION**

We affirm the district court's order granting Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**ROBERT E. ROBLES, Judge**

10