This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v.                                                            NO.  29,741

**ANDREW DOMINGUEZ**,

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Jesse R. Cosby, P.C.
Jesse R. Cosby
Roswell, NM

for Appellee

## MEMORANDUM OPINION

**ROBLES, Judge.**

The State appeals a district court's ruling on a motion to suppress, pursuant to *State v. Ochoa*, 2009-NMCA-002, ¶ 38, 146 N.M. 32, 206 P.3d 143 (filed 2008), *cert. quashed*, 2009-NMCERT-011, 147 N.M. 464, 225 P.3d 794, and subsequent denial of a motion to reconsider. Upon review, we affirm the district court.

**I.     BACKGROUND**

At the hearing on the motion to suppress, the following material facts were developed. On November 13, 2008, while attempting to locate a suspect on a matter unrelated to the current appeal, Detective Mark Mahone of the Roswell Police Department saw Andrew Dominguez's (Defendant) vehicle being operated while the passenger was not wearing a seatbelt. After stopping Defendant's vehicle and approaching, the detective smelled the odor of burnt marijuana and observed in plain view a "smoking device" between Defendant and the passenger. A subsequent consensual search revealed two plastic bags that were later determined to contain marijuana and methamphetamine.

Detective Mahone testified that he is the only member of a special investigatory unit with the Roswell Police Department, titled the Violent Crimes Reduction Unit (VCRU). The VCRU's mandate is to enforce all laws with a zero tolerance policy in a proactive approach that allows him to initiate all citizen encounters and investigate all types of infractions. The purpose of the VCRU is to reduce violent crime by

providing high police presence and visibility. The VCRU originally targeted specific high crime areas but, at the time of the incident, manpower issues limited the areas the could be targeted. Further, the detective testified that he had not been instructed where to patrol and, therefore, he patrols the entire city. As a member of the VCRU, the detective reports to his supervisor, Sergeant Brackeen, who also works and/or oversees another special investigations unit whose focus is on narcotics. The detective works closely with the narcotics unit and consistently investigates narcotics incidents. His narcotics investigations generally arise from other things involving consensual contact or traffic stops. The sergeant likewise testified that (1) the VCRU has just one officer, (2) stops made by the VCRU officer are at the discretion of that particular officer, and (3) he did not know if the VCRU stopped all persons for every infraction witnessed.

At the time the stop was made to enforce Defendant's passenger's seatbelt violation, the detective was driving an unmarked Dodge Charger and was wearing a polo shirt with an embroidered badge. The detective testified he knew Defendant from prior investigations of other infractions, though he could not remember specifics. After seeing a smoking device in plain view, the officer obtained Defendant's consent to search the vehicle. Although his unit provided consent forms, the detective did not ask Defendant to sign a consent form and did not use his belt recorder. After finding

what he believed to be two bags of marijuana in the vehicle, the detective only issued Defendant a citation for possession of marijuana, but told Defendant that he would "cut him a break" for the possession of drug paraphernalia. The detective did not issue either the driver or passenger a citation for the seatbelt violation. The detective then allowed both Defendant and the passenger to leave. Only after subsequent field tests at the station revealed that the bags contained methamphetamine did the detective decide to arrest Defendant. The district court concluded that "[i]t is obvious that Detective Mahone's traffic stops are not for the purpose of regulating the safe and effective flow of traffic in Roswell, New Mexico, but rather to attempt to obtain information regarding serious crimes such as possession and/or trafficking of narcotics and weapons."

## II. DISCUSSION

Whether a search and seizure was constitutional is a mixed question of law and fact. *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836 (citing *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19). We review factual determinations by a district court under a substantial evidence standard. *Id.* "We review whether the laws were correctly applied to the facts de novo, viewing the facts in the light most favorable to the prevailing party." *State v. Rivera*, 2008-NMSC-056, ¶ 10, 144 N.M. 836, 192 P.3d 1213.

In *Ochoa*, this Court concluded that pretextual stops violate New Mexico's Constitution under Article II, Section 10. 2009-NMCA-002, ¶ 1. We clarified that a pretextual traffic stop is where "a police officer is stopping the driver, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving." *Ochoa*, ¶ 16 (internal quotation marks omitted). We acknowledged that, in some situations while there may have been a violation of the traffic law that would give rise to reasonable suspicion or probable cause to conduct a traffic stop, the actual reason that a police officer conducted the stop may lack legal sufficiency. *Id.* We held that a district court should therefore determine whether a stop is "pretextual subterfuge" by considering the totality of the circumstances, judging the credibility of witnesses, weighing the evidence, and, ultimately, make the decision whether to exclude evidence depending on the objective and subjective reasonableness of the stop at its inception. *Id.* ¶ 39. "[T]he officer's intent is determined like any other fact[.]" *Id.*

If the defendant claiming pretext meets the burden of showing that a stop was pretextual based on the totality of the circumstances, the burden then shifts to the state to demonstrate that "even without [the officer's ulterior] motive, the officer would have stopped the defendant" regardless. *Id.* ¶ 40. Factors relevant in analyzing the totality of the circumstances may, but need not necessarily, include consideration of

> whether the defendant was arrested for and charged with a crime
> unrelated to the stop; the officer's compliance or non-compliance with

5

standard police practices; whether the officer was in an unmarked car or was not in uniform; whether patrolling or enforcement of the traffic code were among the officer's typical employment duties; whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed the stop was made, how many officers were present for the stop; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Id.* ¶ 41.

In the instant case, the district court concluded that the facts under the totality of the circumstances analysis supported suppression. Specifically, the district court noted that (1) neither Defendant nor his passenger were cited for the seatbelt violation; (2) Detective Mahone was in an unmarked car and not in uniform; (3) enforcement of the traffic code was not "clearly" among the detective's typical duties, nor was he a patrol officer; and (4) although the detective had probable cause to stop the vehicle for the passenger's failure to wear a seatbelt, it was not the real reason for the stop. These factual findings and credibility determinations were within the purview of the district court, and the evidence developed at the hearing does provide substantial evidence for the district court's factual determinations. *Duran*, 2005-NMSC-034, ¶ 19.

On appeal, the State argues that the pretext doctrine announced in *Ochoa* should not apply to traffic stops made pursuant to a zero tolerance policy designed to deter

6

crime. It is the State's contention that the instant case differs from *Ochoa* in that Detective Mahone did not suspect Defendant of committing another crime at the time the stop was initiated. Moreover, the State urges this Court to view the stop as being akin to roadblocks that are constitutionally permissible because officer discretion is limited. *See, e.g.*, *City of Las Cruces v. Betancourt*, 105 N.M. 655, 658, 660, 735 P.2d 1161, 1164, 1166 (Ct. App. 1987). We conclude that the district court's factual determination that the stop was pretextual is controlling. Specifically, the district court found the real reason that the stop occurred was for the purpose of investigating other serious crimes unrelated to a traffic violation. *Ochoa*, 2009-NMCA-002, ¶ 16 (stating that a pretextual stop is simply where a stop is made to conduct an investigation unrelated to enforcement of the traffic code). To the extent that the State encourages this Court to reweigh, rejudge, or reevaluate the detective's subjective motivations for making the stop, or to conclude that an officer's affiliation with a zero tolerance police unit shields an officer's pretexual motives from an inquiry and examination under the totality of the circumstances, we decline to oblige. *Id.* ¶ 39 (holding that a police officer's subjective intent is a question of fact); *State v. Juan*, 2010-NMSC-041, ¶ 33, ___ N.M. ___, ___ P.3d ___ (recognizing that appellate courts "do not sit as a trier of fact" with respect to factual reviews, and "we will not reweigh the evidence nor substitute our judgment for that of the fact finder" (internal quotation

7

marks and citations omitted)). Nor are we persuaded that the zero tolerance policy by the VCRU is sufficiently analogues to roadblocks, such that we would create a new zero tolerance police unit exception to the constitutional protections recognized in *Ochoa*.

**III.    CONCLUSION**

We affirm the district court.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**