# IN THE SUPREME COURT OF IOWA

No. 12–0139

Filed May 2, 2014

**STATE OF IOWA,**

    Appellee,

vs.

**CRAIG E. HARRISON,**

    Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, C.H. Pelton, Judge (suppression hearing) and Marlita A. Greve, Judge (trial).

Defendant challenges validity of traffic stop upheld by court of appeals and district court. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly G. Cunningham, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

Are police officers permitted to stop a motorist because his license plate frame covers up the county name? Two district court judges in this case issued conflicting rulings on that question, although both denied defendant's motion to suppress evidence of the crack cocaine found in his possession after the traffic stop at issue. Police officers gave two reasons for stopping defendant's Jeep—their belief his license plate was in violation of Iowa Code section 321.37(3) (2009) and their suspicion he was drug dealing based on an informant's tip and his evasive behavior. Defendant was charged with possession with intent to deliver crack cocaine, a drug tax stamp violation, and driving under suspension, but not for a license plate violation.

A district court judge, who presided at the suppression hearing, initially ruled the license plate frame gave no reason to stop defendant because the large plate numbers and letters were visible, but upheld the traffic stop based on a reasonable suspicion of drug dealing. A different judge who presided at trial upheld the stop based on the license plate violation alone and excluded evidence of the informant and suspicious behavior preceding the traffic stop. The jury found defendant guilty as charged. He appealed, and we transferred his appeal to the court of appeals, which held the traffic stop was lawful based on reasonable suspicion of drug dealing without deciding the license plate issue. That court also affirmed the district court's rejection of defendant's claim the State breached a plea agreement. We granted defendant's application for further review to decide whether a license plate violation justified this traffic stop.

For the reasons explained below, we hold a license plate frame that covers up the county name violates Iowa Code section 321.37(3) and

provides a valid basis for a traffic stop. We decline to reach the issue of whether the traffic stop was otherwise lawful based on reasonable suspicion of drug dealing and, therefore, vacate the court of appeals decision on that issue. We affirm the court of appeals decision on the plea agreement issue and affirm the district court judgment and sentence.

## I. Background Facts and Proceedings.

The evening of July 7, 2009, Davenport police officers Craig Burkle and Jason Ellerbach were on patrol in an unmarked Crown Victoria when they received a phone call from a confidential informant. The informant gave the officers an address and told them they would find "a black male . . . slinging dope" in a red Jeep Cherokee with Iowa license plate No. 994 RDB. The officers drove to the address, found the Jeep parked there unoccupied, and waited nearby for the driver to return. A few minutes later, a black male got into the Jeep and drove away. The officers followed the Jeep for approximately five blocks, until the driver pulled over to the side of the road. The officers drove past without seeing the driver get out of his vehicle. The officers believed the driver had pulled over to avoid their tail and to "prevent[] himself from making any traffic violation mistakes" that would allow them to "initiate a traffic stop." The officers circled the block. When they returned to where the driver had stopped, the Jeep was gone.

Minutes later, the officers located the Jeep a few blocks away. The officers followed the driver back to the address given by the informant, where he parked. The officers believed the driver "possibly was doing drops, dropping off narcotics to other residences." Shortly thereafter, the driver left again in the Jeep. The officers followed for three miles and then initiated a traffic stop because the Jeep's license plate frame

covered up the county name on the license plate, which the officers believed violated Iowa Code section 321.37(3). During the stop, the officers identified the driver as Craig Harrison and placed him in the back of their vehicle. They soon discovered he possessed eighteen prepackaged crack cocaine rocks.

On August 11, the State charged Harrison with (1) possession with intent to deliver a schedule II controlled substance, in violation of Iowa Code sections 124.206(2)(*d*), 124.401(1)(*c*)(3), and 703.1; (2) failure to affix a drug tax stamp, in violation of Iowa Code sections 453B.1(3)(*d*), 453B.3, 453B.7(4), 453B.12, and 703.1; and (3) driving while suspended, in violation of Iowa Code sections 321.210A and 321.218. He was not charged with a license plate violation under Iowa Code section 321.37(3). On January 6, 2010, Harrison submitted a guilty plea pursuant to a plea agreement with the State. The State later withdrew from the plea agreement after Harrison's criminal record was discovered to be more extensive than it had originally appeared. Harrison withdrew his guilty plea and proceeded to trial.

On June 7, Harrison filed a motion to suppress the evidence found during the traffic stop. A hearing on the motion was held June 9. Officer Ellerbach and Officer Burkle testified regarding the events leading up to the traffic stop. Officer Ellerbach acknowledged the county name on a license plate is unnecessary for law enforcement to conduct a license plate check.

On June 14, the district court issued its ruling on Harrison's motion to suppress. The court first concluded Iowa Code section 321.37(3) "refers to the large letters and large numbers on the Iowa license plate, not the small letters at the bottom of the plate designating the county." The court noted Harrison was not charged with a license

plate violation. The court thus concluded "the alleged license plate violation" was "pretextual" and "an invalid ground for initiating the stop of the vehicle and search of Harrison."[1] The district court ruled, however, the stop was justified by "sufficient objective facts to support an investigatory stop of the vehicle and driver for suspicion of possessing and selling illegal controlled substances." The district court specifically noted "the tip from an informant, fully corroborated by the officers' observation, . . . the driver's activity, and driver's attempt to evade being followed." The district court denied Harrison's motion to suppress.

The jury trial began September 19, 2011. A different judge presided over the trial, and this judge disagreed with the prior ruling on the license plate issue. The trial judge gave this explanation for upholding the traffic stop based on the license plate violation:

> [I] looked at this file and my concern is that the motion to suppress was granted on one ground, and the Court at that time found that the other ground was pretextual for the traffic stop. I disagree with that. The traffic stop was done by the policemen because they could not see the entire writing on the license plate, and I looked at the statute and I'm having trial this morning, so I would find that the traffic stop was a valid traffic stop because the section 321.166(2) requires a license plate to have a county designation on it. The other statute, 321.37, states that a registration plate or a license plate has to permit full view of all numerals and letters printed on the registration plate. So I believe it was a valid traffic stop, which means that the confidential informant does not have to be mentioned whatsoever.

The trial court thus excluded any mention of the confidential informant or Harrison's behavior before the traffic stop. The jury ultimately found Harrison guilty on all counts.

---

[1]The parties did not raise on appeal the issue of whether a pretextual traffic stop is valid. We therefore do not reach that issue.

Harrison appealed, and we transferred the case to the court of appeals. Harrison argued the district court erroneously denied his motion to suppress because neither the alleged license plate violation nor the surrounding circumstances created reasonable suspicion to justify a traffic stop. He also challenged the district court's ruling that allowed the State to withdraw from the plea agreement.

The court of appeals concluded the informant's tip and Harrison's driving gave the officers reasonable suspicion to stop him. The court of appeals did not consider whether the alleged violation of Iowa Code section 321.37(3) provided an independent basis for the stop. The court of appeals also rejected Harrison's argument that the district court should have enforced the plea agreement. We granted Harrison's application for further review.

## II. Scope of Review.

"On further review, we have the discretion to review all or some of the issues raised on appeal . . . ." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). In this appeal, we exercise that discretion and confine our review to whether the officers validly stopped Harrison for violating Iowa Code section 321.37(3). We decline to review the court of appeals decision affirming the district court ruling that allowed the State to withdraw from the plea agreement. "Therefore, the court of appeals decision on that issue stands." *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013).

The validity of the traffic stop based on the frame covering up the county name on the license plate presents a question of statutory interpretation that we review for correction of errors at law. *See State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013).

### III. Analysis.

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993). A traffic violation therefore also establishes reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990) ("Reasonable suspicion is a less demanding standard than probable cause . . . ."). "The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the stop." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (internal citation omitted). However, "a mistake of law is not sufficient to justify a stop." *State v. Tyler*, 830 N.W.2d 288, 294–96 (Iowa 2013) (requiring suppression of evidence obtained when officer pulled over driver based on mistaken belief license plate cover was illegal). "[T]he possibility for racial profiling requires us to carefully review the objective basis for asserted justifications behind traffic stops." *Id.* at 297 n.4.

Iowa Code section 321.37(3) makes it unlawful "for the owner of a vehicle to place any frame around or over the registration plate which does not permit full view of all numerals and letters printed on the registration plate." We must determine if covering up the county name on a license plate violates Iowa Code section 321.37(3). This is a question of first impression. If Harrison did indeed violate Iowa Code section 321.37(3), the officers had reasonable suspicion to pull him over and the district court correctly denied his motion to suppress.

Harrison argues the phrase "numerals and letters" in Iowa Code section 321.37(3) is a term of art that refers *only* to the large numbers and letters in the center of a license plate that are commonly referred to

as the "registration plate number." *See* Iowa Code § 321.166(2). The first district court judge to rule on the question agreed. The trial judge disagreed. Harrison relies on Iowa Code section 321.166(2), which states in relevant part:

> Every registration plate or pair of plates *shall display a registration plate number which shall consist of alphabetical or numerical characters* or a combination thereof and the name of this state, which may be abbreviated. Every registration plate issued by the county treasurer shall display the name of the county, . . . except Pearl Harbor and purple heart registration plates issued prior to January 1, 1997, and collegiate, fire fighter, and medal of honor registration plates.

*Id.* (emphasis added). Harrison notes this section separately mentions (1) the "registration plate number," which consists of "alphabetical or numerical characters"; (2) "the name of this state"; and (3) "the name of the county." He believes section 321.166(2) makes it clear that "alphabetical or numerical characters" is synonymous with "registration plate number," both of which are distinct from the county name. He then argues the phrases "alphabetical or numerical characters" in section 321.166(2) and "numerals and letters" in section 321.37(3) are interchangeable—both are terms of art referring only to the registration plate number. *See, e.g., id.* § 321.34 (referring to license plate number for various specialized license plates as "letter-number" designation); *id.* § 321.34(12)(*c*) (noting personalized license plates "shall be limited to no more than five initials, letters, or combinations of numerals and letters").

Harrison argues that when the legislature intends to refer broadly to all of the information on a license plate, it uses different terminology than "numerals and letters." Namely, Iowa Code section 321.166(5) requires that "[t]here shall be a marked contrast between the color of the registration plates and *the data which is required to be displayed on the*

*registration plates.*" (Emphasis added.) He asserts that if the legislature intended section 321.37(3) to prohibit drivers from covering up the county name on a license plate, it would have written the statute to say: "It is unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit full view of *the data which is required to be displayed on the registration plates.*"

Harrison further argues Iowa Code sections 321.166(2) and 321.166(4) indicate the legislature does not view the county name as an important piece of information. Iowa Code section 321.166(2) exempts certain types of license plates from displaying the county name: "Pearl Harbor and purple heart registration plates issued prior to January 1, 1997, and collegiate, fire fighter, and medal of honor registration plates." Iowa Code section 321.166(4) requires only "the registration plate number" to "be of sufficient size to be readable from a distance of one hundred feet during daylight." Harrison bolsters this argument with Officer Ellerbach's testimony that officers use the registration plate number to run a license plate check and do not use the county name to retrieve information from the license plate database. For all those reasons, Harrison urges us to conclude a license plate frame covering up the county name does not violate Iowa Code section 321.37(3).

The State counters that the language of Iowa Code section 321.37(3) is clear and unambiguous: it requires "full view of *all* numerals and letters printed on the registration plate," and the county name on the plate is indisputably made up of letters. (Emphasis added.) The State asserts that if the legislature intended to limit the full-view requirement in section 321.37(3) to the "registration plate number," it would have used that phrase instead of "all numerals and letters printed on the registration plate." The State points to Iowa Code section

321.166(2) as evidence of the legislature's ability to refer specifically to the "registration plate number."

In response to Harrison's argument that the county name is not an important piece of information, the State emphasizes that Iowa Code section 321.166(2) requires every license plate, except those exempted by statute, to display the county name. The State asserts this demonstrates "the county name is an integral element of the registration plate." The State points out that, although the county name is not necessary for a license plate check, it nonetheless helps police and citizens identify vehicles. While a person who sees a driver commit a crime may not be able to remember a complete license plate number, the person may be more easily able to recall the county name. This would narrow the search to identify the vehicle. The county name on a plate also shows whether a vehicle is registered locally or not, which may be relevant in identifying suspicious behavior.

The State alternatively asserts Harrison violated Iowa Code section 321.38 by covering up the county name on his license plate. Iowa Code section 321.38 requires license plates "to be clearly visible and . . . maintained free from foreign materials and in a condition to be clearly legible." The State emphasizes that this requirement is not limited to only the license plate number. The State argues Harrison's license plate frame was "foreign material" that prevented his license plate from being "clearly legible."

We have not previously interpreted section 321.37(3). "When interpreting a statute, 'our primary goal is to give effect to the intent of the legislature. That intent is evidenced by the words used in the statute.' " *State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011) (quoting *Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011)). "In determining what

the legislature intended . . . , we are constrained to follow the express terms of the statute." *State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990). "When more than one statute is relevant, we consider the statutes together and try to harmonize them." *State v. Snyder,* 634 N.W.2d 613, 615–16 (Iowa 2001) (construing interrelated provisions of Iowa Code chapter 321 to define "motor vehicle"). "Statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them." *State v. Royer,* 632 N.W.2d 905, 908 (Iowa 2001). "Generally understood words of ordinary usage need not be defined; however, technical terms or legal terms of art must be explained." *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996).

We conclude the plain language of Iowa Code section 321.37(3), read together with section 321.166(2), dictates the outcome of this appeal. Iowa Code section 321.166(2) requires a license plate such as Harrison's to "display the name of the county." Section 321.37(3) in turn provides:

> It is unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit *full view of all numerals and letters* printed on the registration plate.

Iowa Code § 321.37(3) (emphasis added). The language "all numerals and letters" unambiguously requires drivers to display all information printed on the license plate, including the county name. *See Hinojosa v. State,* 319 S.W.3d 258, 262 (Ark. 2009) (finding probable cause based on violation of statute that prohibits "obscuring the license 'plate' " and noting "[n]othing in the language of the statute restricts its applicability to the registration numbers alone"); *Nelson v. State*, 544 S.E.2d 189, 190 (Ga. Ct. App. 2001) (denying motion to suppress when a defendant's license plate cover obscured name of state on license plate tag, noting

"the statute does not specify that only certain portions of the tag must not be obscured"). *But see State v. St. Jean*, 697 So. 2d 956, 957 (Fla. Dist. Ct. App. 1997) (finding county name was not an "identification mark" and, therefore, did not have to be visible on license plate); *State v. Stearns*, 101 P.3d 811, 815–16 (Or. Ct. App. 2004) (interpreting ambiguous statute in light of legislative intent and concluding statute did not prohibit obscuring the word "Oregon").

We reject Harrison's interpretation that section 321.37(3) only prohibits covering up the registration plate number. If the legislature had intended this full-view requirement to apply only to the characters of the registration plate number, it would have used that term in section 321.37(3). Instead, the legislature used broader language: "all numerals and letters printed on the registration plate." *See* Iowa Code § 321.37(3). We give that phrase its generally understood meaning.

Harrison's interpretation would undermine the display requirements for Iowa license plates. Section 321.166(2) expressly required Harrison's license plate to display the name of the county. *See* Iowa Code § 321.166(2). Why permit motorists to cover up information on license plates they are required to display? Furthermore, Iowa Code sections 321.38 and 321.388 demonstrate that the legislature intended that all information to be displayed on a license plate must remain readable. Iowa Code section 321.38 requires "[e]very registration plate" "to be clearly visible and . . . maintained free from foreign materials and in a condition to be clearly legible." Iowa Code section 321.388 requires the illumination of "the rear registration plate [to] render it clearly legible from a distance of fifty feet." Taken together, these statutes reinforce our conclusion that covering up the county name on a license plate violates Iowa Code section 321.37(3). *See State v. Hayes*, 660 P.2d 1387, 1389

(Kan. Ct. App. 1983) (construing equivalent statutory language to require state name on license plate to be legible). Our interpretation harmonizes section 321.37(3) with these related statutory provisions governing the visibility and legibility of information to be displayed on license plates.

Our interpretation of section 321.37(3) also furthers the purpose of the statute. *See Walker*, 804 N.W.2d at 290 (" 'We seek a reasonable interpretation which will best effectuate the purpose of the statute . . . .' " (quoting *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 2011))). An important purpose of Iowa Code section 321.37(3), along with related sections, is to allow police and citizens to identify vehicles. *See State v. Johnson*, 219 S.W.3d 386, 389 (Tex. Crim. App. 2007) (Johnson, J., concurring) (noting "license plates frequently contribute to the investigation and resolution of crime"). "License plates are primarily functional items, and it is not unreasonable to prohibit decorative items or accessories that affect that functionality even to a small degree." *Id.* at 388 (majority opinion). Although the county name is unnecessary to conduct a license plate check, it can be useful to help law enforcement track down a vehicle driven by someone who has been observed breaking the law. Citizens unable to remember a complete registration plate number may be able to help identify a particular vehicle by providing the county name with a partial number.[2]

The trial judge correctly ruled that Iowa Code section 321.37(3) is violated when the license plate frame covers up the county name. Harrison's violation of section 321.37(7) justified the traffic stop. The

---

[2]We recognize that certain specialty plates, such as those for medal of honor winners, firefighters, and collegiate plates, need not display a county name. *See* Iowa Code §§ 321.34, .166(2). Those plates, however, would be easier for a citizen to remember than a random combination of letters and numbers without the county name displayed.

district court therefore correctly denied his motion to suppress. Because we uphold the stop on the basis of his license plate violation, we need not decide and do not reach the issue of whether the stop was independently justified on grounds of reasonable suspicion of drug dealing.

## IV. Disposition.

For the foregoing reasons, we affirm the court of appeals opinion on the plea agreement issue, vacate its decision on the reasonable suspicion issue, and affirm the district court judgment and sentence.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED.**

All justices concur except Appel and Hecht, JJ., who dissent.

**APPEL, Justice (dissenting).**

In my view, the term "all numerals and letters" in Iowa Code section 321.37(3) means "all numerals and letters," not "all numerals, letters, and the name of the county." I reach this conclusion by examining Iowa Code section 321.166(2) (2009), which provides:

> Every registration plate or pair of plates shall display *a registration plate number* which shall consist of *alphabetical or numerical* characters or a combination thereof and the name of this state, which may be abbreviated. Every registration plate issued by the county treasurer shall display *the name of the county* . . . .

(Emphasis added.)

This provision distinguishes between the registration plate number, which contains alphabetical or numerical characters, and the name of the county. Reading the statutes *in pari materia*, I would conclude "all numerals and letters" in section 321.37(3) refers to the registration plate number, not the name of the county. Notwithstanding my conclusion, I recognize there is a plausible contrary interpretation, based in part on policy, which is presented in the majority opinion.

There is, however, a countervailing policy and a larger story in this case that should not be overlooked. Davenport police had received a tip from a confidential informant, but the tip contained only conclusory information. Unlike a tip from a citizen informant, a tip from a confidential informant is not entitled to a presumption of reliability. *See State v. Randle*, 555 N.W.2d 666, 669 (Iowa 1996) ("Because the confidential informant was not a citizen informant, the informant was not entitled to a presumption of reliability."); *State v. Drake*, 224 N.W.2d 476, 478–79 (Iowa 1974) (noting the rule requiring the state to prove the

informant's "prior reliability is considerably relaxed" in the case of a citizen informant).

At the suppression hearing, the State offered no evidence of the informant's reliability. Instead, the State attempted to rely on corroboration at the scene, which consisted almost solely of corroboration of innocent facts like the make, model, and license plate number. Mere corroboration of innocent facts does not establish the basis for a *Terry*-type traffic stop. *Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254, 261 (2000) (holding that to establish reasonable suspicion, the tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person"); *United States v. Roch*, 5 F.3d 894, 897–98 (5th Cir. 1993) (finding tip from known confidential informant who had previously given reliable information did not provide reasonable suspicion for an investigatory stop because the tip failed to provide "significant details" or "a prediction of future behavior" and police did not observe any suspicious behavior in their surveillance of the defendant).

The only allegedly suspicious activity is that the suspect's car pulled over to the side of the road for a few minutes after having been followed from "a far distance," or at a distance of "a block or two," by an unmarked police car. I am not sure a car pulling over gives rise to a hunch, let alone the reasonable suspicion traditionally required to execute a traffic stop under either the Fourth Amendment of the United States Constitution or article I, section 8 of the Iowa Constitution. *See, e.g., People v. Revoal*, 269 P.3d 1238, 1241 (Colo. 2012) (no reasonable suspicion when defendant looked left, looked right, and walked away when he noticed a police vehicle); *State v. McCleery*, 560 N.W.2d 789, 793 (Neb. 1997) (holding approaching motorist who turns around and

drives away rather than pass through a checkpoint does not trigger reasonable suspicion for a stop); *State v. Nicholson,* 188 S.W.3d 649, 661 (Tenn. 2006) (flight, without more, does not establish reasonable suspicion); *State v. Gatewood,* 182 P.3d 426, 428 (Wash. 2008) (walking away from police does not give rise to reasonable suspicion).

The officers seem to have realized they did not have a basis for the traffic stop based upon the unreliable and uncorroborated confidential informant's tip and the mere pulling over of a vehicle along the side of the road. So, instead, they defended the stop by asserting the license plate frame covered the name of the county on the bottom of the plate.

This stop raises the question of pretext. The officers were not engaged in their stakeout to look for license plate violations, nor did they activate their emergency lights and drive through intersections to catch up with Harrison merely to stem the rising tide of license plate infractions. The officers' obvious goal was not to take care of the license plate, but rather to investigate an alleged crime for which they had no basis to initiate a stop.

There is a question as to whether a pretextual basis for a stop or search is constitutionally sufficient. The United States Supreme Court in *Whren v. United States*, 517 U.S. 806, 812–16, 116 S. Ct. 1769, 1774–76, 135 L. Ed. 2d 89, 97–100 (1996), answered this question in the affirmative under the Fourth Amendment, and we are bound by that interpretation for purposes of the United States Constitution. Following the Supreme Court's lead, one court allowed a stop based on the obstruction caused by hanging air fresheners and fuzzy dice. *See Commonwealth v. Shabazz,* 18 A.3d 1217, 1222 (Pa. Super. Ct. 2011).

At least two state appellate courts, however, have rejected *Whren* in the context of traffic stops in interpreting their state constitutions.

The most recent case is *State v. Ochoa*, 206 P.3d 143 (N.M. Ct. App. 2008). In this case, the New Mexico appellate court considered whether a stop for a seat belt violation of a suspect being investigated for drug activity violated the search and seizure clause of the New Mexico Constitution. *Id.* at 146–47. The New Mexico court canvassed numerous authorities, noting, in particular, the ease with which law enforcement may stop automobiles on the road in light of the pervasiveness of minor traffic violations. *Id.* at 148–50. The New Mexico court emphasized that under the New Mexico Constitution, there is no reduced expectation of privacy in an automobile. *Id.* at 151. The New Mexico court further stated:

> In performing a pretextual traffic stop, a police officer is stopping the driver, "not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation."

*Id.* at 149 (quoting *State v. Ladson*, 979 P.2d 833, 837–38 (Wash. 1999)).

The New Mexico court relied on a case from the Washington Supreme Court, which reached a similar conclusion. *See id.* (citing *Ladson*, 979 P.2d at 837–38); *see also State v. Heath*, 929 A.2d 390, 402 (Del. Super. Ct. 2006) (concluding that stops "demonstrated to have been made exclusively for the purpose of investigating an officer's hunch about some other offense" violate the Delaware Constitution). *See generally* Michael Sievers, Note, State v. Ochoa*: The End of Pretextual Stops in New Mexico?*, 42 N.M. L. Rev. 595 (2012) (discussing the New Mexico court's decision in *Ochoa* and concluding the court was right to depart from United States Supreme Court precedent).

While we have recognized police may stop a vehicle when there is reason to believe there is an ongoing civil infraction, *State v. Pals*, 805 N.W.2d 767, 774 (Iowa 2011), we have never directly considered the validity of a traffic stop where the basis of the stop was alleged to be pretextual. This issue of whether *Whren* is good law under the Iowa Constitution when a traffic stop is based on pretext, however, was not raised by Harrison and we do not address it today.

Much has been written about unbridled discretion to stop vehicles on the open road. In particular, commentary has been concerned that without some constitutional restraints, African-Americans and other minority groups may be subject to stops for "driving while black." David A. Harris, *"Driving While Black" and All Other Traffic Offenses: The Supreme Court and Pretextual Traffic Stops*, 87 J. Crim. L. & Criminology 544, 550–53 (1997); *see also* David A. Harris, *Car Wars: The Fourth Amendment's Death on the Highway*, 66 Geo. Wash. L. Rev. 556, 582–84 (1998) (concluding evidence supports a finding that police stop minorities "in numbers greatly disproportionate to their presence in the driving population" even though "there is no race- or ethnicity-neutral explanation for it"); Lewis R. Katz, *"Lonesome Road": Driving Without the Fourth Amendment*, 36 Seattle U. L. Rev. 1413, 1421–33 (2013) (noting that *Whren* "solidified a trend in United States jurisprudence toward ignoring police officers' racial biases, admitted or otherwise" and concluding the only workable solution to pretextual traffic stops is through a reconsideration of *Whren*); Wayne R. LaFave, *The Routine Traffic Stop from Start to Finish: Too Much "Routine," Not Enough Fourth Amendment*, 102 Mich. L. Rev. 1843, 1860–61 (2004) (discussing the difficulties of an equal protection challenge to selective enforcement of traffic laws). While I recognize the need to allow law enforcement to do

its job, article I, section 8 of the Iowa Constitution requires us to ensure individuals are protected from unwarranted seizures on the open road.

We recently began to closely examine traffic stops to prevent expanded and unwarranted searches and seizures. *See, e.g., State v. Tyler*, 830 N.W.2d 288, 297–98 (Iowa 2013) (concluding there was neither probable cause nor reasonable suspicion to stop a vehicle for a license plate violation and that the officer may have specifically targeted the vehicle for some other unknown reason); *Pals*, 805 N.W.2d at 782–84 (holding consent to search a vehicle was invalid where the suspect had been subject to a pat-down search, detained in the police vehicle, and was not advised that he was free to leave, that he could refuse consent, or that all business related to the initial stop was complete). Other state supreme courts have utilized their state constitutions to prevent arbitrary police conduct on the open road in a variety of contexts. *See, e.g., Sitz v. Dep't of State Police*, 506 N.W.2d 209, 210 (Mich. 1993) (declining to follow under state constitution on remand the United States Supreme Court's decision in *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990)); *State v. Askerooth*, 681 N.W.2d 353, 361–63 (Minn. 2004) (rejecting United States Supreme Court decision in *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001), which permitted custodial arrest for seat belt violation); *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 187 (Minn. 1994) (declining to follow the United Sates Supreme Court's decision in *Sitz*, in case involving temporary road block); *State v. Sterndale*, 656 A.2d 409, 411 (N.H. 1995) (rejecting "automobile exception" to warrant requirement and declining to follow *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)); *State v. Carty*, 790 A.2d 903, 912 (N.J. 2002) (consent to search

a vehicle must be based on reasonable suspicion of criminal wrongdoing beyond initial valid motor vehicle stop, departing from *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), in context of traffic stop). These state supreme courts refuse to simply color match cases under their state constitutions with federal precedent and, instead, engage in independent analysis of the state constitutional issues presented.

In the meantime, the take-away point for Iowa citizens is that they better go out to the garage and check their license plate frames if they want to avoid being pulled over by law enforcement on the open road. For the thousands of Iowans who have a frame that promotes a sports team, or an auto dealer, or have a nice (or not so nice) slogan, beware! If the license plate frame happens to obscure the county name on the plate, the State will take the position that police may stop the vehicle anywhere and at any time, whether one is dropping the kids off at school, returning home from the football game, or on the way to work, without any further sign of criminal wrongdoing. The State will likely take the position that the decision to stop a vehicle will rest in the unreviewable discretion of the police regardless of pretext. Sounds a bit like a general warrant, doesn't it? *See State v. Ochoa*, 792 N.W.2d 260, 269–73 (Iowa 2010) (discussing the desire of the framers of the Fourth Amendment to reject the general warrants authorized by the British Crown).

Hecht, J., joins this dissent.