Certiorari Denied, December 11, 2009, No. 32,057

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-006**

**Filing Date: October 30, 2009**

**Docket No. 27,733**

**STATE OF NEW MEXICO**,

    **Plaintiff-Appellant,**

v.

**DANIEL B. HERRERA**,

    **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sam B. Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}**    The State appeals the district court finding that Investigator Bill Hubbard needed reasonable suspicion to justify checking Defendant Daniel B. Herrera's license plate and that because he did not have reasonable suspicion, the evidence obtained after the license plate check was "fruit of the poisonous tree" and therefore inadmissible. We clarify that an

individual has no reasonable expectation of privacy in his license plate number or vehicle identification number (VIN) and hold that Investigator Hubbard's license plate check on Defendant's vehicle was not a search under the Fourth Amendment. Therefore, we reverse and remand for further proceedings.

**BACKGROUND**

**{2}** Investigator Hubbard, an investigator with the Eighth Judicial District Attorney's Office (DAO), testified to the following undisputed facts. On October 5, 2006, Tim Hasson from the DAO informed Investigator Hubbard that there was a "potential incident in the parking lot," referencing Defendant's car. Investigator Hubbard observed Defendant leave the car and enter the DAO, at which point Investigator Hubbard "continued to observe the vehicle that [Defendant] had gotten out of." Investigator Hubbard could not see into the car. Although he testified that he believed that someone may have been in the car who might have been in peril, he did not attempt to ascertain whether there was someone in the car at that point. Instead, he noted the license plate number and ran it through the New Mexico Crime Information Center (NCIC) for a motor vehicle check. The result of the NCIC check informed Investigator Hubbard that the plates did not match the car—the car was a Chevrolet Camaro and the NCIC check matched the plates to a Mercury.

**{3}** As a result of this discrepancy, Investigator Hubbard decided to return to the car to acquire the VIN. However, at that time, Defendant passed Investigator Hubbard's office, so Investigator Hubbard made contact with Defendant in the lobby. He introduced himself to Defendant, walked with him to the parking lot, and asked him about the discrepancy between the car and the NCIC check. Defendant explained that the wrong plates were on the car because he had just purchased the vehicle and had not yet registered it. Investigator Hubbard did not deem this response to be adequate, so he decided to make contact with central dispatch to have the VIN checked. As Investigator Hubbard was reading the VIN over the phone, Defendant opened the driver's door and sat down, allowing Investigator Hubbard to see a silver-colored handgun inside the car on the floor. Because the gun was within Defendant's reach, Investigator Hubbard was concerned for his safety and, therefore, asked Defendant to step from the car while Investigator Hubbard placed the gun on the windshield. Investigator Hubbard then concluded his telephone call after learning that the VIN report revealed "that there was no current valid registration in New Mexico on the car." Investigator Hubbard testified that although it does not necessarily prove rightful possession or rightful ownership either way, this sort of report "leaves a lot of gray area," such that "[f]urther inquiry would need to be made."

**{4}** Investigator Hubbard again approached Defendant, at which point Defendant, "without any question from [Investigator Hubbard] or anything, talked about the gun." Defendant explained "that he had just taken that gun from his nephew [that] morning, who was trying to take it to school with him." Investigator Hubbard then asked Defendant if he was a convicted felon, which Defendant confirmed. At that point, additional officers had arrived at the scene, and Investigator Hubbard placed Defendant under arrest for being a

2

convicted felon in possession of a firearm. Investigator Hubbard instructed another officer to call a wrecker to the scene and inventory the contents of the car according to standard protocol. As a result of the inventory search, a fanny pack and the gun were taken from the car.

{5}     Based on the items found during the inventory search, Defendant was charged with trafficking in cocaine and with possession of drug paraphernalia. Defendant filed a motion to suppress the evidence obtained from the inventory search, arguing that Investigator Hubbard had no reasonable suspicion that any law was being violated once the VIN "was cleared by dispatch" and that, therefore, Defendant's Fourth and Fourteenth Amendment rights were violated by the "continued detention that was no longer based in a reasonable suspicion that a crime had been committed." Defendant further argued that the discovery of the gun was "of no consequence and [was] not related to [Investigator Hubbard's] suspicions justifying the stop." At the hearing on Defendant's motion to suppress, he argued that the seizure of the gun and the ensuing inventory search were improper without a search warrant. At the end of the suppression hearing, without addressing the arguments raised by the parties, the district court found that Investigator Hubbard lacked reasonable suspicion "about anything illegal about the car itself" and, therefore, had no "right to run a license plate check, a VIN . . . check, or any other thing." The court therefore concluded that once Investigator Hubbard ran the license plate, "he undertook an illegal investigation because he had no suspicion. Everything that occurred after that, and evidence obtained after that was illegally obtained." The district court did not address the questions of whether Investigator Hubbard had a right to ask Defendant whether he was a felon or whether the inventory search was proper.

{6}     The State filed a motion to reconsider the district court's finding, after which the district court filed an order suppressing all of the evidence. In its order, the district court did not address the parties' arguments and, instead, reiterated that Investigator Hubbard "did not articulate any facts giving rise to [a] reasonable suspicion of illegal activity or criminal conduct" and that as a result, "everything Investigator Hubbard did following that was an illegal search and seizure. Everything discovered was illegal and what ever [sic] followed was fruit of the poisonous tree." The State appeals.

**MOTION TO SUPPRESS**

{7}     The State argues that the district court erred in requiring Investigator Hubbard to have reasonable suspicion to justify checking Defendant's license plate. Appellate review of a motion to suppress presents a mixed question of fact and law. *State v. Moran*, 2008-NMCA-160, ¶ 6, 145 N.M. 297, 197 P.3d 1079. As the facts in this case are not in dispute, we review the district court's grant of Defendant's motion to suppress de novo. *See id.*

{8}     The State argues that when the district court erroneously found that, because Investigator Hubbard lacked reasonable suspicion about anything pertaining to the car he had no right to run a license plate check, it equated the license plate check "with an officer

3

stopping a car without reasonable suspicion of illegal activity." The State asserts that this was inappropriate in that the license plate check "was neither a search nor a seizure because Defendant did not have an expectation of privacy in the license plate number." We agree with the State. Although New Mexico has not explicitly addressed this issue, our case law has relied on this assumption in related cases. *See, e.g.*, *State v. Reynolds*, 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (holding that individuals have no expectation of privacy in their license, registration, or insurance documents and citing out-of-state cases that have held that individuals do not have a privacy interest in their registration records).

**{9}**     In a similar case involving a license plate check without reasonable suspicion, the Ninth Circuit Court of Appeals held that a license plate check is not a search under the Fourth Amendment. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1150-52 (9th Cir. 2007). In that case, the officer checked the license plate of a truck that was ahead of him on the highway and discovered that the vehicle's registered owner had a suspended license. *Id.* at 1148. As a result, the officer stopped the driver and arrested him for driving with a suspended license. *Id.* at 1148-49. The defendant was a passenger in the truck and a Mexican citizen with an immigration detainer for his arrest as an illegal alien. *Id.* at 1149. The defendant argued that the officer's check of the vehicle's license plate was an unreasonable search because the officer did not have reasonable suspicion of any wrongdoing when he initiated the check. *Id.* at 1150.

**{10}**     The court, agreeing with "all the other courts that have considered the issue," *id.* at 1148, 1150-51, held that "a license plate check does not qualify as a search under the Fourth Amendment." *Id.* at 1150. It stated that "people do not have a subjective expectation of privacy in their license plates, and that even if they did, this expectation would not be one that society is prepared to recognize as reasonable." *Id.* at 1151. It listed several reasons for its holding:  (1) "license plates are located on a vehicle's exterior, in plain view of all passersby, and are specifically intended to convey information about a vehicle to law enforcement authorities"; (2) "a license plate check is not intrusive" since the driver is not even aware that the check has occurred unless the officer discovers something warranting further investigation; and (3) "the Supreme Court has ruled that people have no reasonable expectation of privacy in their [VIN], which is located *inside* the vehicle but is typically visible from the outside," equating a license plate with a VIN. *Id.* (citing *New York v. Class*, 475 U.S. 106, 113-14 (1986)). The court concluded that "when police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search." *Id.* at 1152.

**{11}**     The Tenth Circuit Court of Appeals has also addressed this issue. In *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989), that court stated that "because they are in plain view, no privacy interest exists in license plates." It reasoned that the officer's registration check on the defendant's vehicle "neither unreasonably burdened nor restricted [the defendant's] travel" because "[u]nless a registration check reveals information which raises a reasonable suspicion of criminal activity, the subject remains unaware of the check and unencumbered." *Id.*

4

**{12}**     We agree with this reasoning of the Ninth and Tenth Circuits.  Because a license plate is located in plain view, a license plate check is not intrusive, and because the United States Supreme Court has held that VIN searches are not Fourth Amendment violations because of the lack of a reasonable expectation of privacy, *see Class*, 475 U.S. at 118-19 (holding that "as part of an undoubtedly justified traffic stop," officers checking for the VIN in order to run a search is "sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN"), license plate checks are not searches under the Fourth Amendment.  Therefore, they do not require reasonable suspicion of criminal activity.  As such, Investigator Hubbard did not need reasonable suspicion to conduct a license plate check on Defendant's car, and the ensuing investigation, including the VIN check and questioning of Defendant to explain the discrepancy discovered from the license plate check, was permissible.  We additionally note that although "police may not randomly stop a vehicle solely to check a driver's license or car registration because a seizure of this nature is arbitrary," *Reynolds*, 119 N.M. at  385, 890 P.2d at 1317 (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)), there was no seizure of Defendant in this case because Investigator Hubbard conducted the NCIC check while Defendant was inside the building.

**{13}**     The State further argues that the motion to suppress cannot stand because it was not right for any reason since (1) Investigator Hubbard did not seize the gun when he moved it from Defendant's reach, (2) even if Investigator Hubbard did seize the gun, "Defendant's arrest was valid because it was independent of the seizure and was sufficiently attenuated from the seizure," and (3) Investigator Hubbard was permitted to ask Defendant if he was a felon.  Additionally, the State argues that "the inventory search of Defendant's car would have occurred regardless of the arrest" and that, therefore, "the evidence was admissible under the inevitable discovery doctrine."  Because we agree with the State that Investigator Hubbard did not need reasonable suspicion to check Defendant's license plate and because the district court suppressed the evidence on grounds not argued by the parties, we do not reach the State's remaining arguments.

**CONCLUSION**

**{14}**     We reverse the district court order granting Defendant's motion to suppress and remand for the district court to answer the issues raised below regarding whether evidence obtained after any of the following actions should be suppressed:  (1) the alleged seizure of the gun, (2) the question posed to Defendant regarding his felony status, or (3) the inventory search after Defendant's arrest.

**{15}**     **IT IS SO ORDERED.**

 

 

                                      _____

                                       **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

5

_____

**CYNTHIA A. FRY, Chief Judge**


_____

**RODERICK T. KENNEDY, Judge**


**Topic Index for** *State v. Herrera*, **No. 27,733**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-MH | Motor Vehicle Violations |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |