Certiorari Denied, September 30, 2011, No. 33,192

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-109

Filing Date: August 23, 2011

Docket No.  30,001

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.

DANIEL FROHNHOFER,

  Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Robert S. Orlik, District Judge

Gary K. King, Attorney General
Santa Fe, NM

Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM
for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}** Pursuant to the Interstate Agreement on Detainers (IAD), NMSA 1978, Section 31-5-12 (1971), the State of New Mexico lodged a detainer against Defendant Daniel Frohnhofer. Defendant requested a final disposition of the detainer, triggering a 180-day deadline for the commencement of his trial.  Prior to the deadline, Defendant was paroled in Colorado. When his trial did not commence before the 180-day deadline, Defendant filed a motion to

dismiss. The district court denied the motion. Because we conclude that the IAD does not apply to parolees, we affirm.

## I.     BACKGROUND

**{2}**     When the State learned that Defendant was incarcerated in Colorado, it lodged a detainer against him. Defendant responded on January 6, 2009, by filing a request for final disposition pursuant to Article 3(A) of the IAD. This triggered Defendant's transfer to Curry County, New Mexico, on March 3, 2009. On March 16, 2009, Defendant was placed on parole in Colorado. On July 17, 2009, more than 180 days after he requested a final disposition, Defendant filed a motion to dismiss the New Mexico charges for violation of the speedy detainer limits of the IAD. The district court denied the motion, and a jury convicted Defendant of aggravated battery against a household member, contrary to NMSA 1978, Section 30-3-16 (1995) (amended 2008), and false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963).

## II.     The IAD Does Not Apply After a Defendant Is Released from Imprisonment

**{3}**     Defendant's IAD argument is contained entirely in two sentences at the end of an extensive—but mostly irrelevant—recitation of facts and law: "Defendant's November 2007 motion to dismiss . . . triggered the start of the 180 days. The State's window for prosecuting this case thereby expired in May[] 2008." The State contends that the IAD—and hence the 180-day deadline—ceased to apply when Defendant was paroled in Colorado in March 2009. Although we have held that the completion of a sentence in the sending state terminates a prisoner's rights under the IAD, *see State v. Quiroz*, 94 N.M. 517, 520, 612 P.2d 1328, 1331 (Ct. App. 1980), whether the parole of a prisoner in the sending state renders the IAD inapplicable is a question of first impression in New Mexico.

**{4}**     We must briefly address Defendant's reference to a November 2007 motion to dismiss. The record, which begins with the criminal information that initiated this case on March 23, 2009, contains no evidence of such a motion. *See State v. Harrison*, 2010-NMSC-038, ¶ 10, 148 N.M. 500, 238 P.3d 869 (stating that matters not of record are not considered on appeal). Defendant mentioned this motion at a hearing, but indicated that whatever it was, it was filed prior to the detainer against him. Defendant requested a final disposition of the detainer on January 6, 2009. It was this request that triggered the 180-day deadline. *See* § 31-5-12, art. 3(A).

**{5}**     We turn to the meaning of Article 3 of the IAD, which is a question of statutory interpretation that we review de novo. *See Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. However, "[a]s a congressionally sanctioned interstate compact within the Compact Clause of the United States Constitution . . ., IAD is a federal law subject to federal construction." *New York v. Hill*, 528 U.S. 110, 111 (2000) (internal quotation marks omitted). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning . . . [o]ur inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal quotation marks omitted). "[W]hen the statute's language is plain, the sole function of the courts—at least where the

2

disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted). Unless otherwise defined, we give words in a statute their ordinary, contemporary, meaning. *See Perrin v. United States*, 444 U.S. 37, 42 (1979).

{6}     We begin with the plain language of the statute. Article 3 provides:

> A.     Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever *during the continuance of the term of imprisonment* there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . . .

Section 31-5-12, art. 3(A) (emphasis added).

{7}     Most courts that have examined the effects of parole on the IAD have focused their attention on the requirement that the person asserting rights under the IAD be a prisoner. Imprisonment necessarily implies confinement. *See Black's Law Dictionary* 825 (9th ed. 2009) (defining "imprisonment" as "[t]he act of confining a person, [especially] in a prison"). In contrast, "parole" is "[t]he conditional release of a prisoner from imprisonment." *Id.* at 1227. Accordingly, parole by definition ends a term of imprisonment, thereby rendering Article 3(A) inapplicable. *See Cunningham v. State*, 14 S.W.3d 869, 872 (Ark. 2000) ("[T]he plain language contained in Article [3(A)] . . . provides the IAD only applies during the period when a prisoner continues to serve a term of imprisonment."); *State v. Foster*, 812 P.2d 440, 441 (Or. Ct. App. 1991) ("When [the] defendant was released on parole, the relevant term of imprisonment ended. Expiration of the 180 days did not occur 'during the continuance of [that] term of imprisonment.'" (citation omitted)); *Womble v. State*, 957 S.W.2d 839, 843 (Tenn. Crim. App. 1997) ("We believe that the plain language of [Article 3] indicates that a 'term of imprisonment' does not include a term of parole.").

{8}     As the State points out, Defendant's motion to dismiss relied on *Snyder v. Sumner*, 960 F.2d 1448 (9th Cir. 1992), a Ninth Circuit case with analogous facts. In *Snyder*, a prisoner was transferred from Iowa to Nevada pursuant to a detainer Nevada had filed under the IAD. *Id.* at 1449-50. The prisoner was held in Nevada for 426 days before his trial began and argued that dismissal was necessary because Article 4 of the IAD required trial to commence within 120 days of his arrival in Nevada. *Id.* at 1450. However, the prisoner had been paroled in Iowa on the 120th day. *See id.* at 1451. The magistrate court judge denied the motion, holding that the 120-day limit was no longer applicable because the prisoner had been paroled. *See id.*

{9}     In the prisoner's subsequent habeas corpus action, the Ninth Circuit held that "the 120-day clock starts to run and cannot be turned off by a grant of parole by the sending

3

state." *Id.* at 1453. The court offered two rationales for this result. First, the court believed that allowing parole in the sending state to cut off IAD rights in the receiving state "would give every receiving state a way to bypass the requirements of the [IAD]." *Id.* at 1453. Second, the court argued that such an interpretation was contrary to the plain language of the statute because the 120-day requirement could only be extended "for good cause shown in open court." *Id.* at 1454. We find neither argument persuasive. Regarding the plain language argument, we note that the *Snyder* court framed the question as whether the 120-day limit could be extended. However, as the court acknowledged, the magistrate court judge had denied the prisoner's motion to dismiss because "the 120-day limit was no longer applicable," not because it had been extended. *Id.* at 1451. As discussed above, we agree with the determination that the relevant language of the statute relates to "the continuance of the term of imprisonment." Section 33-5-12, art. 3(A)

**{10}** Furthermore, we do not agree that our holding that a prisoner's parole in the sending state renders the IAD inapplicable gives receiving states a tool to bypass the IAD. Whether for the purpose of helping other states prosecute prisoners or otherwise, we do not believe that states are generally willing to grant parole to otherwise ineligible prisoners. *See Cunningham*, 14 S.W.3d at 872 ("We simply do not share the *Snyder* court's concerns that the IAD's requirements can or will be so easily manipulated by the states . . . ."); *Dunaway v. Commonwealth*, 60 S.W.3d 563, 568 (Ky. 2001) (characterizing this rationale from *Snyder* as "specious"). Furthermore, we agree with the Supreme Court of Kentucky that "[o]nce the prisoner has been released, the need for protection from detainers—substantiated or not—evaporates." *Dunaway*, 60 S.W.3d at 567-68; *cf. Quiroz*, 94 N.M. at 520, 612 P.2d at 1331 ("[W]hen a prisoner is discharged by a sending state, his treatment and rehabilitation in that state is ended and the purpose of the [IAD] loses significance."). Thus, although it is not necessary to consider policy to interpret Article 3, we believe that policy supports the result we reach today.

### III.   Evidentiary Issues

**{11}** Defendant has raised two additional arguments he claims require reversal. The first of these arguments is entirely contained in one sentence: "[t]he repeated reference to 'victim' or 'victims' served to 'destroy the presumption of innocence' in violation of [the Sixth and Seventh amendments of the United States Constitution] and [article II, sections 14 and 18 of the New Mexico Constitution]." This statement is so general we are at a loss to decipher its substance. We decline to address this unsupported single-sentence assertion. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{12}** Defendant also contends that testimony about the "cycle of violence" was improperly admitted through lay witnesses. We agree with the State that this issue was not preserved below, and we therefore do not consider it. *See In re T.B.*, 1996-NMCA-035, ¶ 13, 121 N.M. 465, 931 P.2d 272 ("[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal."). Defendant does argue that we should review the matter for fundamental error, and we do not. *State v. Cortez*, 2007-NMCA-054, ¶ 5, 141 N.M. 623, 159 P.3d 1108 ("Appellate courts are to exercise discretion to review an assertion of fundamental error only in rare instances and solely to prevent a miscarriage of justice where some fundamental right has been invaded.").

4

## IV. CONCLUSION

{13}   For the foregoing reasons, we affirm the district court.

**{14}   IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Frohnhofer_, No. 30,001**

| AE | APPEAL AND ERROR |
|---|---|
| AE-FE | Fundamental Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |

| CL | CRIMINAL LAW |
|---|---|
| CL-AS | Assault |
| CL-BA | Battery |
| CL-DO | Domestic Violence |

| CA | CRIMINAL PROCEDURE |
|---|---|
| CA-DT | Detainer |
| CA-EX | Expert Witness |
| CA-PL | Parole |

CA-PP          Plea and Plea Bargaining

CA-RD          Right to Speedy Trial

CA-SP          Speedy Trial

CA-TL          Time Limitations


**ST**          **STATUTES**

ST-IP          Interpretation