This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37615**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JAMES TYRONE MANNING,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James W. Counts, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant James Tyrone Manning appeals from his conviction following a jury trial of trafficking methamphetamine (by possession with intent to distribute), contrary to NMSA 1978, Section 30-31-20(A)(3)(c) (2006).[1] Defendant challenges the denial of his motion to suppress, the sufficiency of the evidence supporting his conviction for

---

[1]As we explain in the next section, the jury also convicted Defendant of the other crimes he was charged with. Defendant has not challenged those convictions in this appeal. Therefore, we discuss those charges and convictions only for context.

trafficking methamphetamine, and the sentence enhancement for his trafficking conviction. We affirm.

## BACKGROUND

**{2}**     On September 29, 2015, Officer Kyle Graham of the Alamogordo Police Department was on patrol in his duty uniform and was driving a marked patrol car. While on patrol, Officer Graham saw a vehicle traveling south on Indiana Street. Officer Graham completed a license plate check on the vehicle through dispatch. Officer Graham testified that it was his common practice to complete license plate checks on any vehicle when there were no other calls for service.

**{3}**     After dispatch informed him that the vehicle's registration expired in June 2015, Officer Graham initiated a traffic stop based on the expired registration. When the vehicle finally came to a stop, Officer Graham spoke with the driver, who identified himself as Defendant. After Defendant reported that he did not have his driver's license with him, Officer Graham obtained Defendant's date of birth and address, relayed Defendant's name and the additional information to dispatch, and was told that Defendant had a revoked license with an arrest clause. Officer Graham arrested Defendant.

**{4}**     As he was walking Defendant to his patrol car, Officer Graham heard something hit the ground and felt his foot kick an object. Officer Graham looked down and saw a clear container with red jeweler-sized bags. Defendant denied multiple times that he dropped the container; however, Officer Graham subsequently found several red, clear jeweler bags in Defendant's pocket that matched the bags found in the container. Five of the bags in the container contained a white crystal substance that the New Mexico Department of Public Safety Forensic Laboratory later confirmed to be methamphetamine. The recovered methamphetamine weighed 2.1 grams. DNA tests conducted on the bags that were found in the container could not eliminate Defendant as a contributor. Officer Graham obtained a search warrant for Defendant's vehicle and found two additional bags on the driver's side floor board, a broken methamphetamine pipe in the back seat, and a marijuana roach in a cigarette box.

**{5}**     Based on the foregoing, Defendant was indicted, in relevant part, on one count of trafficking a controlled substance, contrary to Section 30-31-20(A)(3)(c); one count of possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019); one count of possession of marijuana or synthetic cannabinoids, contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019); one count of driving with a revoked license, contrary to NMSA 1978, Section 66-5-39.1(B) (2013); one count of driving without insurance, contrary to NMSA 1978, Section 66-5-205 (2013); and one count of improper display of a registration plate, contrary to NMSA 1978, Section 66-3-18(A) (2005, amended 2018).

**{6}**     Before trial, Defendant filed a motion to suppress evidence seized as a result of the traffic stop pursuant to the Fourth Amendment of the United States Constitution and

Article II, Section 10 of the New Mexico Constitution. Defendant argued that Officer Graham lacked reasonable suspicion for the stop and asserted that the traffic stop was pretextual. The State filed a response and argued that because there was reasonable suspicion for the initial stop, it was Defendant's burden to show the stop was unreasonable and that Officer Graham had an unrelated motive to stop him.[2] The matter proceeded to trial without resolution of Defendant's motion to suppress.

**{7}** Defendant raised his motion to suppress again at trial during Officer Graham's testimony. The district court excused the jury and gave Defendant the opportunity to voir dire Officer Graham. During Defendant's voir dire, Officer Graham was unable to recall whether he had to turn around to be able to follow Defendant to obtain his license plate information. Nevertheless, Defendant argued there was no reason for Officer Graham to turn around and run Defendant's license plate and therefore the stop was pretextual.[3] The State argued that there was reasonable suspicion for the stop—the expired registration—and that running license plates was part of Officer Graham's routine. The district court stated that the law in New Mexico allows an officer to pull over a motorist for expired registration and that there is nothing wrong with an officer being proactive and checking license plates. The district court further stated it had no evidence to suggest that Officer Graham was motivated by anything other than general enforcement of motor vehicle laws and concluded the stop was not pretextual. For those reasons, the district court denied Defendant's motion to suppress.

**{8}** The jury ultimately convicted Defendant on all counts. Before sentencing, the State filed a supplemental information and a brief in support of enhancing Defendant's sentence to a first degree felony for committing a second trafficking offense. Defendant filed a response. After a hearing on the matter, the district court ruled that this was Defendant's second trafficking conviction and enhanced his sentence to a first degree felony pursuant to Section 30-31-20(B)(2). The district court sentenced Defendant to a total of nineteen years of incarceration.

## DISCUSSION

### I. We Affirm the District Court's Denial of Defendant's Motion to Suppress

**{9}** In this appeal, developing the argument raised in district court, Defendant argues that his race, not the vehicle's expired registration, was the true basis for the stop.[4]

---

2Defendant's theory of pretext was not clear in his motion to suppress, but he did note his race when outlining the factual basis supporting his motion. In its response to Defendant's motion, the State noted that Defendant was possibly arguing that his race was the pretextual basis for the stop.

3Defendant's theory of pretext was also not clear at the mid-trial hearing on his motion to suppress, other than an assertion that he was "singled out."

4As we have noted, Defendant's theory of pretext was unclear as litigated at the district court. *See State v. Frohnhofer*, 2011-NMCA-109, ¶ 12, 150 N.M. 643, 264 P.3d 739 ("We review the case litigated below [and] not the case that is fleshed out for the first time on appeal." (alteration, internal quotation marks, and citation omitted)). Nevertheless, we believe that the argument advanced by Defendant at the district court could reasonably be interpreted to be consistent with the argument advanced on appeal. Furthermore, both here and in front of the district court, the State addressed race as Defendant's alleged pretextual basis for the stop.

Accordingly, Defendant contends that the stop was pretextual and any evidence that was recovered following the stop should have been suppressed. Defendant's argument relies heavily on this Court's decision in *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143.

**{10}** "The district court's denial of [a] motion to suppress evidence presents a mixed question of fact and law." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]e review the district court's application of the law to those facts de novo to determine whether the search or seizure was constitutionally reasonable." *State v. Chacon*, 2018-NMCA-065, ¶ 19, 429 P.3d 347.

**{11}** In *Ochoa*, this Court defined a pretextual traffic stop as "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." 2009-NMCA-002, ¶ 25. Said another way, "[i]n performing a pretextual traffic stop, a police officer is stopping the driver, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving." *Id.* ¶ 16 (internal quotation marks and citation omitted). "Where there is a factual finding of pretext, that the officer had a constitutionally invalid purpose for the stop which is not exempt from the warrant requirement, the stop violates the New Mexico Constitution, and the evidentiary fruits of the stop are inadmissible." *Id.* ¶ 42.

**{12}** The *Ochoa* Court also explained the burdens the parties must carry when a defendant asserts pretext:

> First, the [district] court must determine whether there was reasonable suspicion or probable cause for the stop. As usual, the [s]tate has the burden of proof to justify the stop under an exception to the warrant requirement. If the stop can be justified objectively on its face and the defendant argues that the seizure was nevertheless unreasonable because it was pretextual under the New Mexico Constitution, then the district court must decide whether the officer's motive for the stop was unrelated to the objective existence of reasonable suspicion or probable cause. The defendant has the burden of proof to show pretext based on the totality of the circumstances. If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual. If the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was pretextual. The burden shifts to the state to establish that, based on the totality of the circumstances, even without that unrelated motive, the officer would have stopped the defendant.

*Id.* ¶ 40 (alteration, internal quotation marks, and citations omitted).

**{13}** Defendant does not appear to challenge that the State met its initial burden to demonstrate that the stop was supported by reasonable suspicion. Instead, Defendant acknowledges that (1) Officer Graham did not need reasonable suspicion to complete the license plate check, *see State v. Herrera*, 2010-NMCA-006, ¶ 12, 147 N.M. 441, 224 P.3d 668; and (2) "[a] traffic stop for an expired registration is constitutionally proper under the [F]ederal and [S]tate [C]onstitutions." Because Officer Graham learned of the expired registration after completing the license plate check but before stopping Defendant, we conclude that Officer Graham's stop of Defendant's vehicle was supported by reasonable suspicion. *See* § 66-3-18(C) (prohibiting driving with an invalid vehicle registration displayed).

**{14}** After the State met its initial burden, it was then Defendant's burden "to show pretext based on the totality of the circumstances." *Ochoa*, 2009-NMCA-002, ¶ 40. Facts that may be relevant to that inquiry include

> whether the defendant was arrested for and charged with a crime unrelated to the stop; the officer's compliance or non-compliance with standard police practices; whether the officer was in an unmarked car or was not in uniform; whether patrolling or enforcement of the traffic code were among the officer's typical employment duties; whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed the stop was made, how many officers were present for the stop; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Id.* ¶ 41. Rather than identifying any specific facts in the record bearing on Officer Graham's motivation for the traffic stop, Defendant simply italicizes three of the foregoing "facts" in his briefing: (1) "whether the defendant was arrested for and charged with a crime unrelated to the stop"; (2) "whether the objective reason articulated for the stop was necessary for the protection of traffic safety"; and (3) "the officer's testimony as to the reason for the stop." *Id.* Defendant does not explain the significance of his italicizations, and we will not attempt to divine the significance nor are we obligated to review this undeveloped argument. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *see also State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."). Nevertheless, even when we consider the "facts" identified by Defendant, we are not persuaded.

**{15}** Officer Graham's testimony suggested that he intended to perform a license plate check of a vehicle he encountered on the road while on patrol, as was his common practice when there were no other calls for service. Only after performing that check and learning that the vehicle had an expired registration did he initiate the traffic stop. As soon as he got to the vehicle, Officer Graham introduced himself and informed Defendant that he pulled him over because of the expired registration. Officer Graham then asked Defendant whether he had insurance on the vehicle and asked for Defendant's driver's license. After Defendant admitted that he did not have his license with him, Officer Graham provided Defendant's name, date of birth, and current address to dispatch. Nothing that occurred in this interaction suggests that Officer Graham was motivated to stop Defendant for anything other than the expired registration.

**{16}** Furthermore, none of the evidence presented during trial or during the mid-trial hearing on Defendant's motion to suppress suggested that (1) the traffic stop was motivated by Defendant's race; or (2) Officer Graham was aware of Defendant's race when he initiated the traffic stop. When considered in light of the foregoing, Officer Graham's further inquiry, which revealed additional facts that led to Defendant's arrest—i.e., that he was driving on a revoked license with an arrest clause—and the fact that Defendant was charged with other unrelated crimes is insufficient, without more, to raise a rebuttal presumption that the stop was pretextual in light of the totality of the circumstances. Accordingly, we conclude that Defendant failed to meet his burden. *See Ochoa*, 2009-NMCA-002, ¶ 40 ("If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual.").

**{17}** Because the traffic stop was supported by reasonable suspicion and Defendant has failed to raise a rebuttal presumption that the stop was pretextual, we conclude that Officer Graham's stop of Defendant was not pretextual. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

## II.    Substantial Evidence Supported Defendant's Conviction for Trafficking Methamphetamine

**{18}** To find Defendant guilty of trafficking methamphetamine, the jury was instructed that the State had to prove the following elements beyond a reasonable doubt:

1.    [D]efendant had methamphetamine in his possession;

2.    [D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law;

3.    [D]efendant intended to transfer it to another;

4.    This happened in New Mexico on or about the 29th day of September, 2015.

*See* UJI 14-3111 NMRA. The jury was also instructed as follows on constructive possession:

> A person is in possession of methamphetamine . . . when he knows it is on his person or in his presence, and he exercises control over it.

> Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.

> Two or more people can have possession of a substance at the same time.

> A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.

*See* UJI 14-3130 NMRA.

**{19}** In places in his briefing, Defendant appears to only argue that there was insufficient evidence that he had control over the methamphetamine as required to support a finding of constructive possession. In other places, Defendant appears to also challenge whether there was sufficient evidence that he had the requisite intent. Accordingly, we analyze both arguments: whether there was sufficient evidence that (1) Defendant had control over the methamphetamine; and (2) Defendant acted with the requisite intent.

**{20}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, an appellate court "views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (alteration, internal quotation marks, and citation omitted). We also disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before the reviewing court is not whether [it] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted).

**{21}** The following evidence relevant to Defendant's control over the methamphetamine was presented at trial. Officer Graham testified that he heard something hit the ground and felt his foot kick an object as he was walking Defendant to his patrol car. When Officer Graham looked down, he saw a clear container with red

jeweler-sized bags inside. The content of five of the bags in the container was later confirmed to be methamphetamine. DNA testing could not eliminate Defendant as a source of the DNA mixture found on the bags that were inside the container. Furthermore, no evidence was presented at trial that suggested any person, except Officer Graham, was in the area where the methamphetamine was found. Based on the foregoing, the jury could reasonably conclude that Defendant exercised control over the methamphetamine as he walked to Officer Graham's patrol car.

{22}    As to Defendant's intent, Officer Graham testified that, based on his training and experience, the amount of methamphetamine found in the bags in the container was inconsistent with personal use. Officer Graham further testified that he found bags matching the bags found in the container in Defendant's pocket. As to the significance of empty bags—like those found in Defendant's pocket—Officer Graham testified that they indicate that a person is packaging drugs to sell. The foregoing evidence was sufficient for the jury to conclude that Defendant intended to transfer the methamphetamine to another rather than intending to keep the methamphetamine for personal use as Defendant contends. *See Rojo*, 1999-NMSC-001, ¶ 19 ("[T]he jury is free to reject [the d]efendant's version of the facts.").

{23}    For the foregoing reasons, we conclude that Defendant's conviction for trafficking methamphetamine was supported by substantial evidence.

## III.    Defendant's Sentence Was Properly Enhanced

{24}    Defendant asserts that the district court erred in enhancing his current conviction under Section 30-31-20(B)(2). Defendant argues that because he was convicted under an entirely different statute, it was improper for his sentence to be enhanced. Defendant furthers argues that the enhancement of his conviction by the district court from a second degree felony to a first degree felony violates his rights under the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution.

{25}    "The application and interpretation of law is subject to a de novo review." *State v. Ochoa*, 2008-NMSC-023, ¶ 10, 143 N.M. 749, 182 P.3d 130. "In New Mexico, the court's sentencing authority is limited by statute[, and t]he [L]egislature must give express authorization for a sentence to be imposed." *State v. Lacey*, 2002-NMCA-032, ¶ 5, 131 N.M. 684, 41 P.3d 952 (citation omitted). When interpreting a statute, we seek to give effect to the Legislature's intent, and do so by looking first to the plain meaning of the statute's language. *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.*

{26}    Defendant's first argument—that his sentence cannot be enhanced because his prior conviction was under a different statute—is contrary to our Supreme Court's decision in *State v. Garduno*, 1979-NMSC-072, 93 N.M. 335, 600 P.2d 281. In that case, the defendant "was convicted of two counts of trafficking . . . a controlled

substance contrary to [Section] 30-31-20(A)." *Garduno*, 1979-NMSC-072, ¶ 2. Based on his prior federal conviction for possession with intent to distribute a controlled substance, contrary to 21 U.S.C. § 841 (1976), the district court enhanced the defendant's sentence for his violations of Section 30-31-20(A) pursuant to Section 30-31-20(B)(2). *Garduno*, 1979-NMSC-072, ¶ 2. On appeal, the defendant contended "that 'second and subsequent offense' mean[t] a second or subsequent violation of [Section] 30-31-20, and that a federal offense cannot be used to increase the penalty for the state offense." *Garduno*, 1979-NMSC-072, ¶ 5.

**{27}**    Our Supreme Court was not persuaded, noting that the statute "merely refers to 'second and subsequent offenses' " and "does not specify that the prior offense must have been committed in New Mexico or prosecuted under [the New Mexico Controlled Substances] Act." *Id.* Because "[t]he statutes proscribe the same acts and require the same knowledge or intent" and "[t]he elements necessary to prove the federal offense were the same as those required to prove the state charges[,]" our Supreme Court concluded that "[t]he federal offense was a prior conviction for purposes of the penalty provisions of . . . [Section] 30-31-20(B)(2)." *Garduno*, 1979-NMSC-072, ¶¶ 6-7. Accordingly, our Supreme Court affirmed the district court's enhancement of the defendant's sentence. *Id.* ¶ 8.

**{28}**    As in *Garduno*, when we compare the elements of Defendant's trafficking offense under Section 30-31-20(A)(3)(c) with the elements of his previous conviction for possession with intent to distribute under NMSA 1978, Section 30-31-22(A)(2)(a) (1990, amended 2011), we conclude that that "[t]he statutes proscribe the same acts and require the same knowledge or intent." *Garduno*, 1979-NMSC-072, ¶ 6. Both Defendant's conviction under Section 30-31-20(A)(3)(c) and his conviction under Section 30-31-22(A)(2)(a) (1990) required the State to prove, in relevant part, that (1) Defendant had a controlled substance in his possession; (2) Defendant knew that it was a controlled substance or believed it to be a controlled substance or believed it to be some drug or other substance the possession of which is regulated or prohibited by law; and (3) Defendant intended to transfer it to another. *Compare* UJI 14-3111, *with* UJI 14-3104 NMRA. Based on the foregoing, we conclude that Defendant's conviction under Section 30-31-22(A)(2)(a) (1990) was a prior offense for purposes of Section 30-31-20(B)(2). Accordingly, we conclude that the district court did not err in enhancing his sentence pursuant to Section 30-31-20(B)(2).[5]

**{29}**    Next, we address Defendant's argument that the internal enhancement of his conviction from a second degree felony to a first degree felony violates his rights under

---

[5]In his briefing, Defendant notes that trial counsel attempted to distinguish *Garduno* on notice grounds, specifically that he "was never put on notice that a future trafficking conviction would result in a first-degree felony conviction." It is not clear whether Defendant is also arguing that we should distinguish *Garduno* on that ground in this appeal. To the extent that Defendant is making that argument, we decline to address it because his argument is undeveloped and is not supported by citation to authority. *See Guerra*, 2012-NMSC-014, ¶ 21 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]").

the Eight Amendment and Article II, Section 13 of the New Mexico Constitution. In New Mexico the Supreme Court has "(1) recognized that the length of a sentence is a legislative prerogative, and (2) absent a compelling reason, the judiciary shall not impose its own views concerning the appropriate punishment for crimes." *State v. Harris*, 1984-NMCA-003, ¶ 50, 101 N.M. 12, 677 P.2d 625. Additionally, New Mexico case law demonstrates that "it is an exceedingly rare case where a term of incarceration, which has been authorized by the Legislature, will be found to be excessively long or inherently cruel." *State v. Augustus*, 1981-NMCA-118, ¶ 8, 97 N.M. 100, 637 P.2d 50. Defendant was convicted of trafficking methamphetamine in the first degree for a second offense. The sentence he received was twice as long as that of a first offense because the judge imposed the lawful and statutorily mandated sentence. A review of the legislative intent of New Mexico's Controlled Substance Act reveals the intent for repeat offenders to serve longer sentences than first time offenders. Therefore, we are not persuaded that Defendant's sentence enhancement and resulting period of incarceration was either cruel or unusual or a violation of his state or federal constitutional rights.

**CONCLUSION**

**{30}**  For the foregoing reasons, we affirm Defendant's conviction for trafficking methamphetamine.

**{31}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**SHAMMARA H. HENDERSON, Judge**